# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RICHARD KREIBICH and<br>SUSAN KREIBICH | : | CIVIL ACTION |
|  | : |  |
| Plaintiffs, | : |  |
| vs. | : | Case No.  2:14-cv-05102-ER |
|  | : |  |
| PLAYA DULCE VIDA, S.A.,<br>HAWK OPPORTUNITY FUND,<br>L.P., HAWK MANAGEMENT<br>L.P., HWC, LLC, and<br>DAVID CALLAN | : |  |
| Defendants. | : |  |

## PLAINTIFFS MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Richard Kreibich and Susan Kreibch (the "Kreibichs" or "Plaintiffs"), pursuant to L. Civ. R. 7.1(c), by and through their undersigned counsel, Silverang, Donohoe, Rosenzweig & Haltzman, LLC, hereby respectfully submit this Memorandum of Law in opposition to the Motion to Dismiss Plaintiffs' Amended Complaint brought by Playa Dulce Vida, S.A. ("PDV"), Hawk Opportunity Fund ("HOF"), Hawk Management L.P. ("Hawk Management"), HWC, LLC ("HWC"), and David Callan ("Callan," and together with HOF, Hawk Management, and HWC collectively, the "Defendants").

Defendants make the following erroneous contentions in the instant Motion to Dismiss: that this Court lacks personal jurisdiction over PDV; that PDV did not breach any contract with Plaintiffs; that Defendants HOF, Hawk Management and HWC have tenuous relationships to this dispute; and that Plaintiffs' fraud-based claims against Defendant Callan are time-barred.  In actuality, the evidence deduced to date supports this Court's ironclad specific jurisdiction over PDV; an alternative exercise of general jurisdiction over PDV would be lawful as well. Second, the Plaintiffs have properly pled PDV's breach of its contractual agreements with Plaintiffs, sufficient to clear the Rule 12(b)(6) hurdle.  Third, Defendants' contention that HOF, Hawk Management and HWC have a "tenuous" relationship to this litigation is laughable, as Count I of the Amended Complaint elucidates the web of ownership and control linking Defendant Callan to PDV through HOF, Hawk Management and HWC.  Finally, Plaintiffs' claims against Callan are timely, as Pennsylvania's discovery rule applies to this case and Plaintiffs first discovered the fraud and contract breaches giving rise to their claims in late 2014.  As a result, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint must be denied in its entirety.  Alternatively, Plaintiff respectfully requests the Court permit jurisdictional discovery to further uncover facts related to this Court's rightful jurisdiction over the Defendants.

## FACTS AND PROCEDURAL HISTORY

The genesis of this dispute is Defendants' sale of preferred shares in PDV (the "Preferred Shares") to Plaintiffs under false pretenses, and the Defendants' numerous wrongful acts, including more specifically PDV's and Callan's blatant breaches of contract after Plaintiffs took ownership of the Preferred Shares. The Preferred Shares convey rights of ownership in and income derived from several unit 501 (the "Unit") at Arenas Del Mar Beachfront and Rainforest Resort (the "Hotel").

Callan's lies and misrepresentations were abundant prior to Plaintiffs' purchase of the preferred shares representing the Unit. Callan — a purportedly licensed financial adviser — lied about the share prices being charged to other PDV shareholders, and told Plaintiffs that all Hotel units were "sold out" when, in fact, they were not. Callan lied about the existence of a re-sale market for the Hotel units – there is no re-sale market – and the likelihood of a $75,000 immediate profit should Plaintiffs elect to "flip" the Unit after purchase.

After the fraudulent sale of the Unit to Plaintiffs, and the Defendants' numerous express breaches of contract, including their failure to provide contractually required annual audited financial statements, use of inappropriate accounting methods, and withholding of contractually mandated income distributions, Defendants then boldly and duplicitously induced Plaintiffs to

convert the Preferred Shares into worthless common PDV shares.  Callan induced Plaintiffs' investment in PDV by promising them certain contractual rights to use and enjoy the Unit, as well as an annual cash distribution of their pro rata share of the "net income" from the Hotel, which promises were contractual obligations under the terms of the PSA Contract.[1]  Callan also sought to substantiate his investment recommendation to Plaintiffs by providing them with his purportedly "conservative financial projections."

In spite of Callan's promises, and in breach of the contracts that expressly contain certain of those promises, Defendants have failed to make any income distributions to Plaintiffs; their refusal is predicated upon Defendants' knowing and intentional accounting manipulations of the income derived by the Hotel.   In addition, Defendants concocted and carried out a scheme to fraudulently induce Plaintiffs to convert their Preferred Shares (which carried income-distribution rights) into illiquid and far less valuable common shares in PDV (which carried no income-distribution rights).  Adding insult to injury, and in further breach of the PSA Contract, Defendants withheld required annual audited financial statements from Plaintiffs, which would have provided Plaintiffs with the information necessary to forewarn them that they needed to act in order to protect their interests at an earlier point in time.

_____

[1] Capitalized terms herein not otherwise defined shall have the meaning ascribed thereto in the Plaintiffs' Amended Complaint.

Accordingly, on September 5, 2014 Plaintiffs filed their original Complaint. Defendants filed a motion to dismiss the Complaint on October 1, 2014. The following day, the Court indicated it would likely consolidate this case with the related litigation styled as *Lieberman v. Callan et als.,* Eastern District of Pennsylvania, No. 2:14-cv-03393-ER, for jurisdictional discovery purposes. On November 4, 2014, Plaintiffs' Amended Complaint was filed, and on November 19, 2014 Plaintiffs' counsel filed a Declaration in support of Plaintiffs' Amended Complaint (the "Declaration"), together with a October 2014 Offering Memorandum from PDV (the "Memorandum"), about which the Defendants must have believed that Plaintiffs were unaware. Defendants' instant motion to dismiss was filed two days later.

## ARGUMENT

### I.   THIS COURT HAS PERSONAL JURISDICTION OVER PDV

Defendant PDV is a Costa Rican corporation with sufficient longstanding and significant contacts with the Commonwealth of Pennsylvania to ensure that this Court's exercise of jurisdiction over PDV in this matter could be reasonably anticipated and comports with due process. Defendant's Motion to Dismiss on this issue pursuant to Fed. R. Civ. P. 12(b)(2) should accordingly be rejected.

### A.    Standard of Review

When deciding a motion to dismiss for lack of personal jurisdiction, the Court must accept the allegations in the complaint as true. *Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir. 1996).  Unless a court holds an evidentiary hearing, a plaintiff need only make *prima facie* showing of personal jurisdiction under Rule 12(b)(2).  *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330 (3d Cir. 2009).

Although a motion to dismiss under Fed. R. Civ. P. 12(b)(2) places the burden upon a plaintiff to set forth sufficient facts to establish a prima facie case in favor of personal jurisdiction, in ruling on a Rule 12(b)(2) motion, the Court must draw all reasonable inferences supported by the factual allegations in the plaintiff's favor.  *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 146 151 n. 1 (3d Cir. 1992). Indeed, any conflict of facts between the plaintiff and defendant are to be resolved in favor of the plaintiff.  *Accord, T.J.S. Brokerage & Co., Inc. v. Mahoney*, 940 F.Supp. 784, 787 (E.D. Pa. 1996) (where both parties present competing facts and evidence concerning defendant's contacts with the forum, any conflicts are to be resolved in favor of the plaintiff); *DiMark Marketing, Inc. v. Louisiana Health Service and Indemnity Co.,* 913 F. Supp. 402, 405 (E.D. Pa. 1996) (same).

### B.     This Court Has Specific Personal Jurisdiction Over PDV

This Court has specific jurisdiction over PDV, and therefore Defendant PDV's Motion to Dismiss for lack of jurisdiction with respect to Plaintiffs' claims against PDV must be rejected.  "A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1986) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over non-residents to the "fullest extent allowed under the Constitution of the United States." 42 Pa. C. S. § 5322(b).  The due process clause of the United States Constitution, in turn, permits personal jurisdiction so long as the non-resident defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

This Court has specific personal jurisdiction over any defendant who has engaged in an affirmative act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Hanson v. Denckla,*

357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)), where the litigation results from alleged injuries that "arise out of or relate to" those activities, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182 85 L.Ed.2d 528 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

In general, the negotiation, execution and performance of contractual obligations can constitute minimum contacts if those activities touch the forum. "With respect to interstate contractual obligations, the Supreme Court has emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254, 260 (3d Cir. 2000) (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)).

The Supreme Court has endorsed "a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp.,* 471 U.S. at 479, 105 S.Ct. 2174 (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316, 63 S.Ct. 602, 87 L.Ed. 777 (1943)). "It is these factors—prior negotiations and contemplated

future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*

The Third Circuit has adopted this approach in its analysis of specific personal jurisdiction over defendants outside the forum. *See, e.g. Mellon Bank (East) PSFS, National Association v. Farino,* 960 F.2d 1217, 1224 (3d Cir. 1992) (describing the Third Circuit's "highly realistic" method of analyzing minimum contacts that looks to "prior negotiations and contemplated future consequences, along with the terms of the contract."). Indeed, under Third Circuit jurisprudence, contract negotiations *alone* can empower a court to exercise personal jurisdiction over persons outside the forum if the negotiations were undertaken with forum residents. *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 147–48 (3d Cir.), *cert. denied,* 506 U.S. 817, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992) (calls and correspondence sent into New Jersey from Louisiana by the representative of a Louisiana real estate developer, coupled with a meeting in New Jersey to facilitate the closing of a loan, provided the minimum contacts with New Jersey to satisfy due process). *Carteret Savings Bank* relied upon *Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 558 A.2d 1252, 1256 (1989), wherein the parties' only transactional contacts consisted of telephone calls and mailing of sales agreement, which formed the basis of the court's specific jurisdiction over the defendant; *see also Taylor v.*

*Phelan,* 912 F.2d 429, 433 n. 4 (10th Cir. 1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991) ("So long as it creates a substantial connection, even a single telephone call into the forum state can support jurisdiction").

It is clear from the pleadings on file, the exhibits thereto, and the Plaintiffs' submissions to the Court, that PDV – under the ownership and control of Defendant Callan – solicited Plaintiffs' investment in PDV through the acts and statements of its Pennsylvania-resident President, majority owner, and agent, Callan.  As Plaintiffs set forth in the Amended Complaint at paragraphs 4-19, Callan owns, operates and directs Defendant HWC.  HWC is the general partner of Hawk Management, and Callan is a limited partner of Hawk Management.  Hawk Management is the general partner of HOF, with "full and exclusive discretionary authority and responsibility to manage the day-to-day operations of the [HOF] Fund and to invest and reinvest its assets."  *See* Amended Complaint ("Am. Compl.") ¶ 10 and Ex. A.  HOF is the majority controlling owner of PDV.  *Id.* ¶ 15 and Ex. A.  Callan is the President of PDV.  *Id.* ¶ 16 and Ex. C.  PDV openly acknowledges that HOF, under Callan's control, has "the ability to exert control over our management and affairs and over matters requiring stockholder approval [and] may delay or prevent a change in our control and might affect the market price of our Common Stock, even when a change in control may be in the best interest of all stockholders.  Furthermore, the interests of this concentration of

ownership may not always coincide with our interests or the interests of other stockholders."  *See* Declaration of Philip S. Rosenzweig, Esquire in Support of Plaintiffs' Amended Complaint ("Rosenzweig Decl.") at ¶ 5 and Ex. A p. 9.

Callan, HWC, Hawk Management and HOF share a business address in Newtown, Pennsylvania.  Am. Compl. ¶¶ 2, 4, 7, 11, 13 and 23.  PDV is a Costa Rican entity with a self-described United States "branch office" at the same Newtown, Pennsylvania address as Callan, HWC, Hawk Management and HOF. *See* Rosenzweig Decl. ¶ 6 and Ex. A p. 12.

In soliciting the Plaintiffs' purchase of preferred PDV stock and in exerting control over PDV's "management and affairs and over matters requiring shareholder approval," Callan acted and continues to act as an agent of PDV.  The Third Circuit has long held that the activities of a party's agent count toward the minimum contacts necessary to support jurisdiction.  *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 484 (3d Cir. 1993).  PDV, through its agent Callan, reached into the Commonwealth of Pennsylvania for the initiation, negotiation, execution and performance of the PSA Contract which forms the basis of this dispute.

In his capacity as PDV's agent, from his office in Newtown, Pennsylvania (which offices also serve as PDV's United States "branch" office), Callan contacted Plaintiffs, analyzed Plaintiffs' finances and solicited their investment in

PDV stock throughout 2005.  Am. Compl. ¶¶ 54-57.  Specifically, Callan sent an e-mail to Plaintiffs on November 20, 2005 from his offices in Newtown, Pennsylvania,[2] attaching "conservative" "financial projections" of the Kreibichs' return on Callan's recommended investment in PDV stock.  Am. Compl. ¶¶ 66-70 and Ex. K.  Callan also represented to the Plaintiffs in that same correspondence that they could opt to finance PDV by investing funds in HOF, which Callan deemed "my fund."  Am. Compl. Ex. K p. 1.

On December 31, 2005, Callan sent the Kreibichs another e-mail from Pennsylvania recommending a $275,000 investment in PDV stock with attendant use and enjoyment rights in a one bedroom unit at the Hotel.  Am. Compl. ¶¶ 71-79 and Ex. L.  On behalf of PDV, Callan offered to arrange for Plaintiffs to secure a loan in order to pay for the preferred PDV shares, writing that "We are still working out the financing package so I am not sure how long the amortization will be . . ."  Id. ¶¶ 75-76.  Therein Callan also misrepresented the value of preferred PDV shares, stating that other investors were paying "20,000+ for each share" while the Kreibichs were only paying $18,333.  Id.  In truth, at that time other investors were actually paying only $16,600 per preferred share, far less than the Plaintiffs. Id. ¶ 76.

---

[2] Defendants concede that Callan e-mailed Plaintiffs repeatedly from his Pennsylvania offices.  Def. Mot. p. 11 ("'[Callan's e-mails to Plaintiffs] were sent from Pennsylvania . . .'").

Callan e-mailed Plaintiffs the PSA Contract[3] on behalf of PDV from PDV's Newtown, Pennsylvania "branch" offices on January 3, 2006. Am. Compl. ¶¶ 81-82. On January 3, 2006, Callan again e-mailed the Plaintiffs from his Newtown, Pennsylvania offices, falsely representing that because the Hotel was "sold out" – which it was not – the Plaintiffs had the freedom to resell their Unit after acquisition for a projected quick profit of nearly $75,000. *Id.* ¶¶ 86-87 and Ex. Q.

When the Plaintiffs purchased their preferred shares the following month, they did so in two payments. Am. Compl. ¶¶ 90-94. The first payment of $125,000 was made directly to PDV in Costa Rica on February 1, 2006. *See* July 1, 2014 Chronology of ADM Investment, attached hereto as **Exhibit 1**. The second and final payment of $150,000 was made on November 30, 2007 at Callan's direction to Pershing, LLC, and then F/F/C [Forwarded For Credit] to HOF in Newtown, Pennsylvania. *Id.* Over the ensuing years, the Plaintiffs communicated with Callan by telephone at his Newtown, Pennsylvania office frequently regarding their PDV investment. *Id.*

On February 15, 2011, the PDV Board, of which Callan is President, issued the Preferred Shareholder Letter, instructing preferred PDV shareholders that in order to allow income distributions and increase the value and liquidity of PDV stock they must convert their preferred shares into common PDV stock. Am.

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in Plaintiffs' Amended Complaint.

Compl. ¶¶ 131-136 and Ex. I.  The Preferred Shareholder Letter references conversations Callan personally held with investors in PDV from his Newtown, Pennsylvania offices.  Am. Compl. Ex. I p. 1 ("As you know from talking to Mr. Dave Callan or other members of our Board of Directors, the parent company of [the Hotel], Playa Dulce Vida, S.A., has been undergoing a transformation . . .").  It also describes Callan's plans to control PDV through HOF in Pennsylvania.  *Id.* Ex. I p. 3 ("Our company Vice President, Mr. David Callan is a principal of a pooled investment fund in Pennsylvania, Hawk Opportunity Fund.  Mr. Callan, who is the registered owner of preferred shares, has indicated to the Board that he and a group of other preferred shareholders will be exchanging into common stock and that they may turn over that stock into Hawk for management purposes.  It is believed by the company that if this occurred, the majority of the company's common stock might be controlled by Hawk Opportunity Fund.").

The Preferred Shareholder Letter provides Callan's Pennsylvania phone number, and instructs preferred shareholders to convert their preferred shares to common shares by completing a Stock Exchange Offer Form, which must then be mailed to PDV's Corporate Secretary, Paul H. Lesniak ("Lesniak"), at 415 McFarlan Road, Suite 200, Kennett Square, Pennsylvania.  *Id.* at Ex. I and Ex. J. Plaintiffs did, in fact, execute the Stock Exchange Offer Form and remit it to Lesniak at his Pennsylvania address.  *See* Ex. 1 ¶¶ 18-19.  Lesniak, as PDV

Secretary, was obligated to maintain PDV's official records, and presumptively did so at his offices in Pennsylvania to which the Stock Exchange Offer Forms were remitted.

PDV's Private Placement Memorandum (the "Memorandum"), issued on October 1, 2014, acknowledges PDV's "branch office" in the United States – the same office occupied by Callan, Hawk Management, HWC and HOF. *See* Rosenzweig. Decl. Ex. A p. 12. Like the Preferred Shareholder Letter, the Memorandum directs subscribers to return their subscription forms to Lesniak. *Id.* at Ex. A Appendix "Instructions for Completion of Subscription Booklet." However, this time Lesniak's return address was not the Kennett Square, Pennsylvania address from the Preferred Shareholder Letter, but rather the same Newtown, Pennsylvania address shared by Callan, Hawk Management, HWC and HOF. *Id.* In fact, subscribers are directed by the Memorandum to return their PDV investment subscriptions in care of Hawk Management. *Id.*

Under the Third Circuit's "highly realistic" analysis, this factual scenario exceeds the minimum contacts requirements for the exercise of specific personal jurisdiction over PDV. Plaintiffs negotiated the PSA Contract with a Pennsylvania agent (Callan) acting on behalf of PDV, Plaintiffs were fraudulently induced to enter into that contract by the same Pennsylvania agent acting on behalf of PDV, Plaintiffs received the PSA Contract from that Pennsylvania agent, and Plaintiffs

converted their preferred PDV shares by remitting the required form to another Pennsylvania agent of PDV (Lesniak) at his address in Pennsylvania. These acts demonstrate PDV's intentional contacts with the Commonwealth of Pennsylvania, each of which form the basis of one or more of Plaintiffs' claims against the Defendants. By and through these acts, PDV, using Callan as its agent, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Grand Entertainment Group,* 988 F.2d at 482. Such a showing is sufficient to establish this Court's specific personal jurisdiction over PDV.

Defendants assert that PDV's contact with Pennsylvania is "isolated and sporadic." Def. Mot. p. 10. They contend that PDV's collection of investors' and subscribers' submissions in Pennsylvania does not constitute the purposeful direction of PDV activities in Pennsylvania, but merely an accommodation for unreliable Costa Rican mail service. Def. Mot. p. 9. It is no mere coincidence, however, that the address for collection of PDV's essential corporate documents is also the address of PDV's majority owner, who exerts "control over [PDV's] management and affairs and over matters requiring stockholder approval,"[4] PDV's President, who oversees management of the Resort as part of the PDV Executive Committee, and two PDV Board members.

---

[4] Rosenzweig Decl. ¶ 5 and Ex. A p. 9.

Defendants also contend in error that payments to PDV do not funnel through Pennsylvania entities, and instead "are to be paid to the order of 'Playa Dulce Vida, S.A.' or wired directly into PDV's escrow account," *Id.*  As the accompanying Declaration of Richard Kreibich ("Kreibich Decl.," attached hereto as **<u>Exhibit 1</u>**) and the exhibits thereto demonstrate, one of Plaintiffs' two payments to PDV was directed to be "F/F/C" – or forwarded for credit – to HOF in Pennsylvania.  *See* Ex. 1 at ¶¶ 11-12 and Ex. A thereto.  To the extent that this Court finds that any of the evidence supports Defendants' position that PDV's contacts with Pennsylvania are "attenuated and fleeting," Def. Mot. p. 9, such conflicts are to be resolved in favor of the plaintiff.  *T.J.S. Brokerage & Co.*, 940 F. Supp. at 787; *DiMark Marketing,* 913 F. Supp. at 405.  As a result, this Court's indisputable specific personal jurisdiction over PDV is unaffected by Defendants' arguments.

## C.    This Court Also Has General Jurisdiction Over PDV

A plaintiff may meet its burden in the face of a motion to dismiss under Rule 12(b)(2) by establishing the court's general jurisdiction by virtue of the defendant's "continuous and systematic general business contacts" with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).  To satisfy the requirements of general personal jurisdiction, a defendant's forum activities must be "extensive and pervasive" to be

considered continuous and substantial.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (examining defendant's "purposeful and extensive availment" of the benefits and privileges of the forum state); *Wims v. Beach Terrace Motor Inn, Inc.,* 759 F. Supp. 264, 269 (E.D. Pa. 1991) (citing *Helicopteros,* 466 U.S. at 414).  Some of the objective criteria used by courts to ascertain general jurisdiction are:

> (1) is the defendant incorporated or licensed to do business in Pennsylvania; (2) has the defendant ever filed any tax returns with the Commonwealth of Pennsylvania; (3) does the defendant file administrative reports with any agency or department of the Commonwealth; (4) does the defendant regularly purchase products or supplies within Pennsylvania for use in its business outside of the state; (5) does the defendant own land or property within the state; (6) does the defendant advertise in Pennsylvania; and (7) does the defendant maintain an agent in Pennsylvania.

*Wims,* 759 F. Supp. at 269.

In this case, PDV's contacts with the Commonwealth of Pennsylvania are indeed extensive and pervasive systematic general business contacts.  PDV's co-Defendant HOF, a limited partnership with a principal place of business in Pennsylvania, has continually advanced funds from its investment pool in Pennsylvania, which funds PDV used to build the Hotel at the heart of this matter. *See* Compl. ¶ 36 & Ex. H.  As of 2009, HOF accumulated a 75% interest in PDV, and remains its controlling shareholder.  *Id.* ¶ 15 & Ex. B.  HOF asserted in December 2010 that, from its offices in Pennsylvania, HOF "in combination with

the condo owners now control[s] the equity and management of the hotel[.]"  HOF
also owns development rights for expansion of the Hotel PDV has developed.  *Id.*
at Ex. B.  PDV publicly acknowledges in the Memorandum that HOF has "the
ability to exert control over our management and affairs."  Rosenzweig Decl. Ex.
A p. 9.  Defendant Callan owns, operates, directs and controls HOF's general
partner, Hawk Management, from Pennsylvania.  *Id.* ¶¶ 7-9.  HOF's 2004 Private
Placement Memorandum admits that "Management and control of the business and
operations of the [HOF] Fund are vested exclusively in the General Partner [Hawk
Management] . . . The success of the [HOF] Fund is significantly dependent on the
expertise of David S. Callan."  *Id.* ¶ 10 & Ex. A.  Thus Callan, from his offices in
Pennsylvania, owns, operates, directs and controls the general partner of HOF,
which owns and manages PDV from the same location in Newtown, Pennsylvania.
PDV openly admits that Callan's office even serves as PDV's "branch office" in
the United States.  Rosenzweig Decl. Ex. A p. 12.  A clearer example of the
purposeful establishment of minimum forum contacts cannot be imagined.

And yet there is more.  Callan, who lives and works in Pennsylvania, is also
the President of PDV.  Compl. ¶¶ 2 & 16.  Callan also serves on the three-member
Executive Committee of PDV.  In 2013 and 2014, Callan solicited members of the
public residing in Pennsylvania to patronize PDV's Hotel through use of hyper-
local media and the orchestration of highly-publicized Hotel events involving well-

known Pennsylvania chefs.  *Id.*¶¶ 27-34 & Ex. D, E, F & G.  In addition to the aforesaid, PDV has, through its Hotel Manager, Lesniak, routinely collected PDV stock certificates and subscription agreements at Lesniak's Kennett Square, Pennsylvania address.  *See, e.g.,* Kreibich Decl. Ex. C & D.  Plaintiffs have even submitted undisputable evidence that they were directed to make payment for PDV shares by forwarding $125,000 for the credit of HOF in Pennsylvania.  *Id.* Ex. B. These acts demonstrate the "extensive and pervasive" ongoing relationship between PDV and the Commonwealth of Pennsylvania.

The fact that PDV does not own Pennsylvania land or hold a Pennsylvania license is of no moment.  Nor is the lack of PDV tax filings or supply purchases in Pennsylvania significant. Indeed, the United States Supreme Court has found the purposeful establishment of minimum contacts with the forum may be based upon a defendant's creation of such continuing obligations between himself and residents of the forum.  *See, e.g., Burger King*, 471 U.S. at 487, *cf., T.J.S. Brokerage & Co., Inc*. *v. Mahoney*, 940 F.Supp. 784, 789 (E.D. Pa. 1996) (quoting *Mellon Bank PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992)) (court had specific jurisdiction over non-resident defendants who lacked physical contact with the forum, because the defendants knowingly created continuing obligations with a citizen of Pennsylvania.).  Thus, Plaintiffs have plead sufficient facts, supported by

competent evidence, to sustain their burden of establishing general personal jurisdiction over PDV sufficient to clear the Rule 12(b)(2) hurdle.

### D.     This Court Has Alter Ego Jurisdiction Over PDV

"It is well settled that a court may exercise personal jurisdiction, consistent with the Constitution, over a corporate entity that is the alter ego of a party over which jurisdiction is proper. *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners L.P.,* No. 08-4564, 2010 WL 3069607, at *3 (E.D. Pa. Aug. 2, 2010). Courts in this district consider a range of factors in determining whether entities are alter egos, including the following:

> Ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) subsidiary performing business functions which the principal corporation would normally conduct through its own agents or departments; (9) subsidiary acting as marketing arm of the principal corporation, or as an exclusive distributor; and [(]10) receipt of officers of the related corporation or instruction from the principal corporation.

*Id.* (quoting *Oeschle v. Pro-Tech Power, Inc*., No. 03-cv-6875, 2006 WL 680908, 4 (E.D. Pa. Mar. 15, 2006)); *accord, e.g., Renner v. Roundo AB*, No. 1:08–cv–209–SJM, 2010 WL 3906242, *5 (W.D. Pa. Sept. 29, 2010); *Gammino v. Verizon Commc'n, Inc*., No. 03-cv-5579, 2005 WL 3560799, *3 (E.D. Pa. Dec. 27, 2005) (Green, J.); *In re Latex Gloves Prods. Liab. Litig*., No. MDL 1148, 2001 WL 964105, *4 (E.D. Pa. Aug. 22, 2001). Plaintiffs submit that Defendant HOF, by

and through its co-Defendants HWC and Hawk Management, is the alter ego of Defendant PDV.

Applying those factors here, it is undisputed that HOF owns a majority of the outstanding PDV common stock.  Second, Callan serves as PDV's President and director and Executive Committee member, while at the same time serving as HOF's limited partner, and as the owner of Hawk Management – the general partner of HOF – and of HWC, which owns and controls Defendant Hawk Management.  Third, managerial and supervisory personnel, such as Callan and Lesniak, appear to be interchangeable among PDV and its co-Defendants.  Fourth, HOF and Callan carry out significant business functions for PDV, such as securing investments in PDV, directing the PDV Board (which directs the management of the Hotel), advertising Hotel events, etc.  The PDV Executive Committee "directs" the management of the Hotel, which is carried out on a day-to-day basis by Hotel employees in Costa Rica.  This Executive Committee includes Callan and non-party Scott Williams, both of whom own and operate HWC, Hawk Management and HOF.

Defendants offer nothing substantive to rebut Plaintiffs' assertion that  HOF, by and through and Hawk Management, is the alter ego of PDV.  Callan repeats the bald assertion that the "day-to-day operations of both PDV and the Resort are controlled in Costa Rica by [] Costa Rican-based [sic] individuals . . ." Callan Aff.

¶ 24.  This self-serving, unsupported and conclusory statement falls far short of sustaining Defendants' burden.  *See, Gould Electronics, Inc. v. U.S.*, 220 F.3d 169, 177 (3d Cir. 2000) ('Evaluating for itself the merits of [Defendants'] jurisdictional claim, the Court finds that this quantum of evidence - a short self-serving affidavit with no supporting documentation - cannot itself sustain a factual attack on the Court's subject-matter jurisdiction."); *see also, Washington v. Hovensa LLC,* 652 F.3d 340, 346–47 (3d Cir. 2011); *De Cavalcante v. C.I.R.,* 620 F.2d 23, 26–27 (3d Cir. 1980) (when charged with making evidentiary determinations, court may find that self-serving affidavits, absent evidentiary support, are insufficiently probative).

In light of the above, Plaintiffs satisfy their burden of demonstrating a "single functional and organic identity" between and among PDV and the various Defendants such that PDV is the alter ego of HOF, HWC and Hawk Management. As this Court undisputedly has personal jurisdiction over each and every one of these Defendants, it may properly exercise alter ego jurisdiction over PDV. *Atlantic Pier Associates,* 2010 WL 3069607 at *5.

### E.   This Court's Exercise of Jurisdiction Over PDV Comports with Due Process

Pennsylvania's long arm statute, as well as the Constitutional mandates of due process, focus on harms or tortious injury caused by acts or omissions in this Commonwealth (*see, e.g.*, 42 Pa.C.S.A. § 5322(a)(3)), and actions and activities

within, or emanating from, this Commonwealth that are indicative of corporate governance and control.  *Modern Mailers, Inc. v. Johnson & Quin, Inc*., 844 F. Supp. 1048, (E.D. Pa. 1994) (general jurisdiction over non-resident corporation is dependent upon a showing of "regular contact with Pennsylvania that was central to [the] functioning of its business.").  Due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised.  *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir. 1993).

In this case, Pennsylvania has a real and significant interest in subjecting residents and resident entities to  liability for wrongs committed in, and/or emanating from, the Commonwealth, regardless of where the effects are felt.  It is abhorrent to the values and provisions of the Pennsylvania Constitution to allow Pennsylvania-domiciled corporations to commit fraud and breach binding contracts while enjoying the protections afforded by the Commonwealth.  *See* Pa. Const. Art. X    § 2 ("Private corporations which have accepted or accept the Constitution of this Commonwealth or the benefits of any law passed by the General Assembly after 1873 governing the affairs of corporations shall hold their charters subject to the provisions of the Constitution of this Commonwealth.").  This is particularly true where, as here, the wrongful conduct involves misrepresentations made in this forum.  *See, e.g.,* Complaint ¶¶ 58, 64-79 & 81-89 & Ex. K, L, M, N, O, P & Q.

The fact that PDV is a Costa Rican corporation is of no moment.   As described in detail, *supra,* PDV has extensive contacts with Pennsylvania by virtue of the substantial participation of Pennsylvania residents on PDV's Board of Directors and Executive Committee, acting as PDV's agents, owning a majority of the outstanding PDV stock, and creating and carrying out its executive and managerial policy and strategy.   *Cf., Curtis Management Group, Inc. v. Joseph Frazier*, 1996 WL 1358458 (Pa. Com. Pl. 1996) (defendant, by virtue of  its agent's actions, had minimum contacts with forum).   The regular presence in Pennsylvania of PDV's governing agents negates any burden on PDV to defend its claims here.   Indeed, Defendants' principal witnesses, Callan and Williams, both reside and work in this forum.

Finally, Plaintiffs' claims are connected to this forum by the presence of PDV's controlling members, who are Pennsylvania residents, and their sending and receiving of telephone calls, e-mails and mailings which perpetrated the frauds and other wrongs alleged in Plaintiffs' Amended Complaint.   These Pennsylvania residents have been delegated by PDV with the authority to create and carry out its policy and strategy, including the bad acts alleged in the Complaint to have been committed on behalf of PDV.

Nor should any due process concern prevent the Court from exercising its jurisdiction where the abundance of uncontroverted evidence demonstrates PDV's