purposeful and deliberate use of this forum – through agents and directors operating within this forum – to carry out the fraudulent solicitation of investors and the wrongful conversion of stock described in the Amended Complaint. *Accord, Atlantic Pier Associates, LLC v. Boardakan Restaurant Partners, L.P.*, No. 08-4564, 2010 WL 3069607, *4-5 (E.D. Pa. Aug. 2, 2010) (Pollak, J.) (citing and quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 325 (3d Cir. 2007) ("only in a 'rare and compelling case' that notions of fair play standing alone present a basis for declining jurisdiction."). Accordingly, Plaintiff has sustained its burden of demonstrating why Plaintiffs' allegations should be litigated in this District.

### F. Jurisdictional Discovery is Warranted

If the Court is not convinced by the facts submitted by Plaintiffs to date in support of its exercise of jurisdiction over PDV, Plaintiffs respectfully request that they be permitted to engage in jurisdictional discovery regarding the relationships among the Defendants, as well as PDV's direct and indirect contacts with the Commonwealth of Pennsylvania. Courts in this District are directed to permit jurisdictional discovery "unless the plaintiff's jurisdictional claims are 'clearly frivolous.'" *Orazi v. Hilton Hotels Corp.*, 2010 WL 4751728, *7 (E.D. Pa. Nov. 22, 2010) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)) (citation and quotations omitted). As this Court noted in *Orazi:*

> Indeed, the Third Circuit has characterized jurisdictional discovery as the plaintiff's "right" when the plaintiff has alleged sufficient facts to suggest with "reasonable particularity the possible existence of the requisite contacts between the party and the forum state." [*Toys "R" Us*, 318 F.3d] at 456 (internal quotations and citations omitted). Discovery may be particularly important where a plaintiff is faced with the difficult task of establishing jurisdiction over a corporate defendant. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 3356 (3d Cir. 2009).

*Orazi*, 2010 WL 4751728, *7 (E.D. Pa. Nov. 22, 2010).

Here, Plaintiff has alleged sufficient facts regarding the Defendants' contacts with the Commonwealth and PDV's relationship with HOF and Callan to suggest that discovery will reveal a Callan-PDV and/or HOF-PDV control relationship and such in-forum contacts that will further establish with certainty this Court's jurisdiction over PDV. Plaintiff has alleged sufficient facts as to the presence of PDV-related persons and activities within Pennsylvania and "at least an inchoate relationship between" PDV and the Hawk Defendants to warrant discovery. *Orazi*, 2010 WL 4751728, *7 (E.D. Pa. Nov. 22, 2010). In addition, as the *Orazi* court eloquently stated:

> discovery is particularly important here where each of the Defendants is a corporation and much of the information that Plaintiffs require to evaluate the nature of the relationships among the Defendants and the extent of their contacts with this forum … is publicly inaccessible and controlled by Defendants.

*Orazi*, 2010 WL 4751728, *7 (E.D. Pa. Nov. 22, 2010). Similarly, in the instant litigation, the discovery of publicly inaccessible information regarding corporate

Defendants PDV, HOF, Hawk Management and HWC would further elucidate the interwoven relationship between them and clarify the command structure therein. Therefore, Plaintiffs respectfully request that, if the Court deems it necessary, they be permitted to conduct jurisdictional discovery before the Court rules on the Defendants' motion to dismiss Plaintiffs' Amended Complaint.

## II.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS SHOULD PROCEED TO TRIAL

Defendants allege that, even if this Court has jurisdiction over PDV, Plaintiffs' claims should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' Amended Complaint alleges eight claims against Defendants, which were amended by Plaintiffs to include more specific pleading. These claims include alter ego/piercing the corporate veil (Count I), breach of contract (Count II), breach of the implied duty of good faith and fair dealing (Count III), fraud (Counts IV and V), tortious interference with contract (Count VI, against all Defendants except PDV), and fraud in the inducement (Counts VII and VIII). Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of any claims asserted herein is unwarranted; instead, Plaintiffs beseech the Court to reject Defendants' obvious attempts at delay and obfuscation and instead guide this litigation toward a trial of Plaintiffs' claims on the merits.

### A. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 129 S.Ct. at 1949 (internal quotations and citations omitted).  The allegations "must be enough to raise a right to relief above the speculative level … on the assumption that all of the complaint's allegations are true." *Brandow Chrysler Jeep Co. v. Datascan Techs.*, 511 F. Supp. 2d 529, 534 (E.D. Pa. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted); *see also, Schwartz v. Lawyers Title Ins. Co.*, 680 F. Supp. 2d 690, 700 (E.D. Pa. 2010).

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Id.* at 570.  A complaint has alleged sufficient facts "if it adequately put [the] defendant on notice of the essential elements of the plaintiff[s'] cause of action." *Brandow*, 511 F. Supp. at 534 (citing *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)).

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the

facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 228 (3d Cir. 2008). The complaint's likelihood of success is not relevant to this inquiry; when considering a 12(b)(6) motion to dismiss, the court may not "inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Id.* (citing *Nami,* 82 F.3d at 65).

Applying this standard, Plaintiffs' detailed Amended Complaint and the numerous exhibits attached thereto, including contracts by and between Plaintiffs and Defendants relative to which Plaintiffs allege specific breaches, together with the Rosenzweig and Kreibich Declarations and attached exhibits clearly set forth and support eight facially plausible claims for relief. The facts pled in the Amended Complaint allow the court to reasonably infer that the Defendants are liable for the harms alleged by the Plaintiffs, and put the Defendants on notice of the elements of Plaintiffs' claims against them. The evidence supplied in the exhibits to the Amended Complaint and the Declarations support these claims. As a result, Defendants' Motion to Dismiss Plaintiffs' Amended Complaint should be rejected by this Honorable Court.

### B. Count I States a Facially Plausible Claim Against Defendants for Alter Ego/Piercing the Corporate Veil

Defendants baldly assert that the Amended Complaint contains "no facts . . . that support an alter-ego theory." Def. Mot. p. 21. In reality, the Amended

Complaint is replete with allegations of fact – supported by attached evidence – of Defendants' web of ownership and control which supports Count I's claim of alter ego liability. Specifically, Plaintiffs assert the following in support of Count I:

- Callan is the President of PDV, a PDV Board member and a PDV Executive Committee member.
- HWC is the general partner of Hawk Management and is the beneficial owner of all securities that Hawk Management owns.
- Hawk Management is the general partner and sole investment manager of HOF, which owns the majority of outstanding PDV shares, and through that ownership exerts dominion and control over PDV.
- Thus Callan, through HWC, and in turn Hawk Management, and in turn HOF, controls the majority of common and preferred shares of PDV.
- There has been comingling and intermingling of funds and other assets between and among Callan, HOF, HWC and Hawk Management.
- Callan draws no distinction in ownership or identity between and among HOF and PDV.
- PDV has not paid dividends in the regular course of the Hotel's business.
- In conducting his business affairs, Callan intentionally obfuscated whether his actions were taken on his own account or as an officer, director, investment partner, manager, financier, owner or employee of PDV, HOF and/or Hawk Management and/or HWC, such that members of the public were purposefully led to believe that all of these entities and Callan were one and the same.

- Callan, HOF, Hawk Management, and HWC all operate out of the same offices in Newtown, Pennsylvania, and significant corporate affairs of PDV are also directed from and conducted from these same offices.
- Upon information and belief, Defendant Callan has represented to PDV shareholders that he personally controls the possession and release of the shareholders' PDV stock certificates.
- Callan, from his offices in Newtown, Pennsylvania, controls the business management of the Hotel, as well as certain day-to-day operations of the Hotel, including but not limited to its targeted culinary themed weeks, which control is touted in local media.
- Callan and HOF openly admit to their managerial leadership of and extensive investment in PDV and its Hotel.

Am. Compl. ¶¶ 153-156 & 161b-i.

The alter ego theory "is applicable when the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." *Advanced Telephone Systems, Inc. v. Com-Net Professional Mobile Radio, LLC*, 846 A.2d 1264, 1278, 2004 Pa. Super. 100 (2004). Plaintiffs have clearly alleged that PDV has failed to adhere to corporate formalities and used the corporate form to perpetrate fraud. Am. Compl. ¶¶ 2-20, 23-48 & 153-161 & Ex. A-I. Plaintiff's Amended Complaint indisputably "contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).

### C. Counts II and III State Facially Plausible Claims Against Defendants for Breach of Contract and Breach of the Implied Duty of Good Faith and Fair Dealing

Plaintiffs' Amended Complaint undoubtedly sets forth a viable cause of action for multiple breaches of contract (Count II) and for breach of the implied duty of good faith and fair dealing (Count III). To state a cause of action for breach of contract, the complaint must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from that breach. *Boyd v. Rockwood Area School District,* 907 A.2d 1157 (Pa. Commw. 2006). "In order to state a claim for breach of the implied duty of good faith and fair dealing, the Complaint must allege bad faith in the performance of contractual duties, which includes: 'evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.'" *Cave v. Saxon Mortg. Servs.,* 2012 U.S. Dist. LEXIS 176381 n.3, 2012 WL 6209891 (E.D. Pa. Dec. 12, 2012) (citing *Somers v. Somers,* 418 Pa. Super. 131, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992) (citing Restatement (Second) of Contracts § 205(d))).[5] The Amended Complaint alleges each of these elements.

---

[5] Contrary to Defendants' contention that "Pennsylvania law does not recognize a stand-alone claim for breach of implied [sic] covenant of good faith and fair dealing," Def. Mot. p. 24, a claim for breach of the duty of good faith and fair dealing may be brought in Pennsylvania

In their Count II alleging breach of contract, first the Plaintiffs allege the existence of four written contracts between the parties – the PSA, and Rental Pool Agreement, the Regulations and the PSA Addendum, which are referred to collectively in the Amended Complaint as the "PSA Contract" – each of which are attached to the Complaint and incorporated therein by reference. Am. Compl. Ex. M-P. The Amended Complaint then describes the terms of the contracts, sets forth the contracts' essential terms, and details the precise manner in which Defendants have breached them: by improperly calculating net income, by withholding income distributions and by failing to annually produce audited financial statements. Am. Compl. ¶¶ 81, 83, 91 & 96-130. Finally, the Amended Complaint sets forth the damages suffered by Plaintiffs, including an estimated $120,000 in unpaid distributions. *Id.* ¶ 176. No more is required to make out a breach of contract claim sufficient under Rule 12(b)(6) standards.

In their Count III alleging breach of the duty of good faith and fair dealing, Plaintiffs assert the existence of binding contracts between the parties, and allege that Defendants' refusal to provide audited financial statements, employment of improper accounting methodology and refusal to distribute income constitute breaches of the implied duty of good faith and fair dealing. Am. Compl. ¶ 184.

---

provided the claim sets forth a prima facie case of breach of contract, with the duty of good faith as the breached provision. *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F.Supp.2d 394, 401 (E.D. Pa. 2002) ; *J.F. Walker Co. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002).

These alleged misdeeds necessarily constitute "evasion of the spirit of the bargain, lack of diligence and slacking off, [and] willful rendering of imperfect performance," and therefore demonstrate an allegation of breach of the duty of good faith and fair dealing sufficient to surmount a Rule 12(b)(6) challenge. *Cave,,* 2012 U.S. Dist. LEXIS 176381 n.3, 2012 WL 6209891. No more is required.

Defendants seek in error to use their instant motion as a platform to dispute the merits of Plaintiffs' claims in Counts II and III. *See* Def. Mot. pp. 22-24 (arguing that the contract language allows for the accounting methods employed by Defendants). However, the Third Circuit reminds us that on a motion to dismiss, the court may not "inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." *Phillips,,* 515 F.3d at 228. Therefore, Plaintiffs will not address the merits of the Amended Complaint's well-plead contract-based claims.

Finally, the four-year statute of limitations applicable to Plaintiffs' contract-based claims begins to run when Plaintiffs became aware of their injury or its cause, which was in or about May 2014. *See* Kreibich Decl. ¶¶ 10-11 & 14-17 & Ex. A (" May, 2014: … When asked (again) for the current value of our 30,428 shares and the desire to liquidate, Callan said he might be able to buy them back from us for about half of the original investment. This was very hard for us to

comprehend since the book value of the shares (as listed in the shareholder update on Feb. 2011) were priced at $8.90/share. How could our investment decrease so significantly between 2011-2014?").

Although as a general rule, in a case involving breach of contract, a party's right of action accrues as soon as the other party fails to perform, *Selig v. Philadelphia Title Ins. Co.,* 380 Pa. 264, 111 A.2d 147, 151 (1955), Pennsylvania applies a discovery rule relating to the accrual of breach of contract actions when an injured party is unable, despite the exercise of due diligence, to know of an injury or its cause. *Pagano v. Flakey Jake's,* 1995 U.S. Dist. LEXIS 16284, at *5-9 (E.D. Pa. Nov. 2, 1995); *see also City of Phila. v. One Reading Ctr. Assocs.,* 143 F. Supp. 2d 508, 526 (E.D. Pa. 2001). "The discovery rule is based on the notion that it would be unjust to deprive a party of a cause of action before that party has a reasonable basis for concluding that a viable claim exists." *One Reading Ctr. Assocs.,* 143 F. Supp. 2d at 526.

Plaintiffs were unaware of Defendants' breach of the PSA Contract until May 2014. Kreibich Decl. ¶¶ 14-17. In spite of Plaintiffs' diligent efforts to determine the true value of their PDV investment, the financial status of the Hotel operation, the availability of distributions and the whereabouts of audited annual financial reports, Defendants controlled this information and refused to divulge it to Plaintiffs as shareholders. *Id.* Only in a May 2014 telephone conversation with

Callan was it disclosed to Mr. Kreibich that his investment in PDV had declined in value by nearly half, and was essentially illiquid. *Id.* It was at this point, therefore, that Plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing were known and accrued. As a result, those claims were timely brought.

In sum, Plaintiffs submit that Counts II and III state facially plausible claims against Defendants for breach of contract and breach of the implied duty of good faith and fair dealing, and were timely brought. Thus, Defendants' motion to dismiss Counts II and III should be rejected by this Honorable Court.

### D. Counts IV, V, VII and VIII Are Timely

Defendants assert without basis that Plaintiffs' fraud based claims should be dismissed as untimely. Def. Mot. p. 27. As with Plaintiffs' contract-based claims, the two-year statute of limitations applicable to Plaintiffs' fraud-based claims began to run when Plaintiffs became aware of their injury or its cause, which was in or about May 2014. *See* Ex. 1, Kreibich Decl. ¶¶ 23-24. Even to the extent that Plaintiffs rely upon Callan's statements from 2005, 2006 or 2007 in support of their claims, those claims are nevertheless timely because of the application of the discovery rule, discussed *supra.*

Here, Plaintiffs' discovery of Defendants' fraud against them was prompted by a May 2014 telephone call in which Callan disclosed to Mr. Kreibich the true

"value" of his PDV investment. *Id.* ¶ 24. Prior to that call, Plaintiffs could not have known that statements made by Callan and PDV were misrepresentations and untruths, because all information regarding PDV and the Hotel was controlled by Defendants. *Id.* ¶¶ 22-23. Furthermore, in reliance upon the content of the February 2011 Preferred Shareholder Letter, Plaintiffs believed their investment had retained its value and that they were diligently preserving the financial health of PDV and the liquidity of their investment by converting their PDV shares from preferred stock to common stock. *Id.* ¶¶ 14-15 & 18.

This is a clear-cut case warranting application of the discovery rule, as that rule is founded on the principle that "it would be unjust to deprive a party of a cause of action before that party has a reasonable basis for concluding that a viable claim exists." *One Reading Ctr. Assocs.*, 143 F. Supp. 2d at 526. Upon determining that they had viable causes of action for fraud and fraud in the inducement, Plaintiffs promptly brought those claims against Defendants before this Honorable Court. Ex. 1 ¶ 24. Therefore, Plaintiffs respectfully request that this Court reject Defendants' motion to dismiss Counts IV, V, VII and VIII of the Amended Complaint.


### E. Count VI States a Facially Plausible Claim Against Hawk Management, HOF, HWC and Callan for Tortious Interference with Contract

Plaintiffs have made out a valid claim against Defendants Callan, HOF, Hawk Management and HWC for tortious interference with contract. Am. Compl. ¶¶ 212-216. Under Pennsylvania law, to prevail on a claim for tortious interference with contractual relationships, a party must prove: (1) the existence of a contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship; (3) the absence of privilege or justification on the part of the defendant; [and] (4) legal damage to the plaintiff as a result of the defendant's conduct;" *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998); *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). Plaintiffs' Amended Complaint includes all the requisite elements of this claim.

Plaintiffs' Amended Complaint alleges the existence of the PSA Contract between Plaintiffs and PDV, which is not named in this Count. Am. Compl. ¶¶ 90-91. The Amended Complaint also alleges that Callan, HOF, HWC and Hawk Management took purposeful action to harm the relationship between Plaintiffs and PDV by causing PDV to withhold income distributions and perpetrating the conversion scheme detailed therein, action the were not privileged or justified in

undertaking. *Id.* ¶¶ 214-215. Finally, the Amended Complaint alleges that Plaintiffs suffered "damages in excess of $275,000" as a result of the tortious interference with contract committed by Defendants Callan, HOF, HWC and Hawk Management.

These allegations set forth a valid claim for tortious interference with contractual relationships under Pennsylvania law. *Acumed,* 561 F.3d at 212. Further, these allegations sufficiently put Defendants "on notice of the essential elements of the Plaintiffs' cause of action." *Brandow*, 511 F. Supp. at 534; *Nami*, 82 F.3d at 65. As a result, Plaintiffs have met their burden under Rule 8(a), and Defendants' motion to dismiss should be denied by this Court as to Count VI of the Amended Complaint.

### F. Neither The Gist Of The Action Doctrine Nor The Economic Loss Doctrine Bar Plaintiffs' Tort Claims

Defendants argue in their instant motion that all of Plaintiffs' tort claims (Counts IV-VIII) are collateral to the breach of contract claims and should be precluded under Pennsylvania's gist of the action doctrine. Def. Mot. p. 28. Alternatively, Defendants argue that Plaintiffs' fraud claims (Counts IV, V, VII and VIII) are barred by California's economic loss rule. *Id.* Defendants are wrong; neither of their cited doctrines apply here, and their motion to dismiss should be rejected.

The gist of the action doctrine does not apply in cases such as this one, where the Defendants' fraud induced the Plaintiffs to enter the contract, and was not merely collateral to the contract. *Mill Run Assocs. v. Locke Prop. Co.*, 282 F.Supp. 2d 278, 290–91 (E.D. Pa. 2003) (denying motion to dismiss fraudulent inducement claim under the gist of the action doctrine where the plaintiff alleged that he was fraudulently induced to "continue under the terms of the [a]greement") (Scuderi, J.); *Weed v. Ally Fin., Inc.*, No. 11–cv–2808, 2011 WL 3803719, at *5 (E.D. Pa. Aug. 26, 2011) (Tucker, J.) (finding an exception to the gist of the action doctrine where the plaintiff alleged that he was "fraudulently induced to continue under the contracts ... by injecting additional capital"); *Air Prods. and Chems., Inc. v. Eaton Metal Prods.*, 256 F. Supp. 2d 329, 342 (E.D. Pa. 2003) (gist of the action doctrine did not bar a claim for fraudulent inducement where defendant fraudulently misrepresented his qualifications to perform contractual obligations); *Interworld Network International, Inc. v. VWR International, Inc.*, 2012 WL 78738, *4 (N.D. Cal. 2012) (applying Pennsylvania law in relevant part) (gist of the action inapplicable where the claims against [defendants] are related to the inducement into the contract, rather than the promises regarding performance made in the contract."); *accord, American Guarantee and Liability Insurance Co. v. Fojanini*, 90 F. Supp. 2d 615, 623 (E.D. Pa. 2000) ("While the underlying complaint contains allegations that agreements were breached, the action as a

{00514578;2} 41

whole clearly sounds in tort, as the action is grounded in the general duty to exercise reasonable care in making representations that could result in reliance. The contract allegations are merely collateral to the conduct that is primarily tortious[.]").

Similarly, the economic loss doctrine also has limited application. *Howe v. LC Philly*, LLC, 2011 WL 1465446, *6 (E.D. Pa. 2011) (applying fraud in the inducement exception to gist of action *and* economic loss doctrines to negligent misrepresentation claim which is ancillary to any claim relating to performance of contract). In particular, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows *only* from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (emphasis supplied). "The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed *only* by agreement." *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 372 (E.D. Pa. 1996) (quoting *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1271 (M.D. Pa. 1990)) (emphasis added).

In this action, Plaintiffs allege that Defendants committed torts against them which are separate and apart from the PSA Contract. Counts IV and VII allege that Callan, PDV and the other Defendants fraudulently misrepresented the return Plaintiffs could expect on their investment in PDV in order to induce them to

invest in PDV stock. Am. Comp. ¶¶ 188-200 & 217-224. Counts V and VIII allege that the Defendants made fraudulent misrepresentations to Plaintiffs in order to induce Plaintiffs to convert their preferred PDV stock into common PDV stock. *Id.* ¶¶ 201-211 & 225-233.

The duties breached by Defendants are common law duties of fairness and truthfulness, not merely contract-based duties of performance. Accordingly, Plaintiff's claims against Defendants should not be dismissed based upon the economic loss doctrine. Similarly, because the gist of the action doctrine is not applied to claims that the Defendants' fraud induced the formation of a contract (Counts IV and VII) or that Defendants' fraud induced action unrelated to contractual duties (Counts V and VIII), it cannot act to bar Plaintiffs' claims here. Therefore, Defendants' arguments regarding the gist of the action doctrine and the economic loss doctrine hold no water, and their motion to dismiss must be rejected.

## CONCLUSION

For any and all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss the Plaintiffs' Amended Complaint in its entirety. Alternatively, Plaintiffs respectfully request that the Court permit jurisdictional discovery prior to ruling on the instant motion.

                        Respectfully submitted,
                        **SILVERANG, DONOHOE,**
                        **ROSENZWEIG & HALTZMAN, LLC**

                        By: <u>/s/ Philip S. Rosenzweig</u>
                        Philip S. Rosenzweig, Esquire
                        595 East Lancaster Avenue
                        Suite 203
                        St. Davids, Pa 19087
                        (610) 263-0115
                        (610) 263-0122 (Fax)
                        prosenzweig@sanddlawyers.com

                        *Counsel for plaintiff Dr. Richard Lieberman*

Date:  December 17, 2014