E
X
H
I
B
I
T

"D"

# EXHIBIT "D"

{00467564;1}

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD and SUSAN KREIBICK | CIVIL ACTION |
| Plaintiffs | Case No. 2:14-cv-5102-ER |
| vs. | |
| PLAYA DULCE VIDA, S.A. et al. | |
| Defendants. | |

| | |
|---|---|
| DR. RICHARD LIEBERMAN | CIVIL ACTION |
| Plaintiff | Case No. 2:14-cv-3393-ER |
| vs. | |
| PLAYA DULCE VIDA, S.A. et al. | |
| Defendants. | |

## DEFENDANTS' SUPPLEMENTAL ANSWERS AND OBJECTIONS TO FIRST SET OF JOINT REQUESTS FOR ADMISSIONS BY PLAINTIFFS

Pursuant to the Court's November 12, 2015 Order and Federal Rule of Civil Procedure 36, defendants Playa Dulce Vida, S.A. ("PDV"), Hawk Opportunity Fund, L.P. ("HOF"), Hawk Management L.P. ("Hawk Management"), HWC, LLC ("HWC"), and David Callan ("Callan") (collectively, "Defendants") through its undersigned counsel, hereby further supplement their supplemental responses and objections to Plaintiffs' First Set of Joint Requests for Admissions (the "Admissions") as follows:

## I.    General Objections

The following General Objections shall be deemed incorporated into each of Defendants'

Responses as if fully set forth therein, and each such Response is subject to the following General Objections. Where one or more objection is repeated or referred to in a specific Response, it is for emphasis only.

1.   Defendants object to Definition/Instruction No. 11 to the extent it seeks responses from non-parties to this lawsuit.

2.   Defendants object to the Admissions insofar as and to the extent to they are vague, ambiguous, overbroad, nonspecific and voluminous intended to harass, annoy and unduly burden Defendants. "Properly used, requests for admissions serve the expedient purpose of eliminating 'the necessity of proving essentially undisputed and peripheral issues of fact.'" *Gannon v. United States*, No. CIV.A.03-6626, 2006 WL 2927639, at \*1 (E.D. Pa. Oct. 6, 2006) (citations omitted). However, requests for admissions "should not be of such great number and broad scope as to cover all issues of a complex case, and obviously should not be sought in an attempt to harass an opposing party." *Id.* (citations and internal quotations omitted). In this case, the Admissions contain over 100 pages totaling 206 requests, plus subparts. The Admissions are grossly excessive in number and are therefore abusive, burdensome and oppressive. The burden and expense of responding to these requests for admissions far outweighs any possible benefit that Plaintiffs may derive from them. Moreover, the purpose of requests for admission under Federal Rule of Civil Procedure 36 "is not necessarily to obtain information, but to narrow the issues for trial." *Webb v. Westinghouse Elec. Corp.*, 81 F.R.D. 431, 436 (E.D. Pa. 1978); *see also United Coal Companies v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988)(citing *Webb* ). Requests for admission should be phrased in such a manner that the responding party need only respond with "yes" or "no", "denied" or "admitted" or otherwise claim a privilege with minimal explanation. *United Coal* at 967-968. It has been established that requests for

2

admission are in essence a simplified procedure that should require minimal response and explanation as well as rarely requiring reliance on documentation of facts outside of the requests themselves: "Ordinarily the facts admitted in an answer to a request for admissions should be ascertainable merely by examination of the request and of the answer." *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, No. CIV.A.3:2003-57, 2007 WL 1300772. at *2 (W.D. Pa. May 2, 2007) (citations omitted). Further, "[p]laintiffs may not present ... a broad and non-specific request for admissions of facts." *In re: Bell Atlantic Corp. Sec. Litig.*, 1996 WL 47970, at *1 (E.D. Pa. Feb. 2, 1996) (citations omitted).

3.      Defendants object to the Admissions insofar as and to the extent to they call for a conclusion of one of the ultimate issues in the case. *McCarthy v. Darman*, 2008 WL 2468694, at *1 (E.D. Pa. Jun. 17, 2008) (citations and quotations omitted).

4.      Defendants object to the Companion Interrogatory and Document Request that accompany each Admission. With respect to the Document Requests, they are duplicative of Plaintiffs' First Set of Joint Requests for Document Nos. 1 and 3 (requesting documents that "evidence, concern, support, refute, refer or relate to [Defendants'] responses to the [Admissions]" and documents "[Defendants] relied on in preparing the [Admissions]."). The Companion Interrogatories run afoul of Federal Rule of Civil Procedure 33(a), which limited the number of interrogatories a party may serve to twenty-five—here there are 206. Moreover, a party has no obligation under Rule 36 to qualify a denial in any way other than as set forth in Rule 36(a)(4). Regarding companion interrogatories, "[t]his Court knows of no authority for the proposition that a party is required to write a brief in support of each instance in which it cannot admit or deny a [Request for an Admission]." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, No. CIV. A. 88-9752, 1992 WL 394425, at *9 (E.D. Pa. Dec. 28, 1992).

3

5.      Defendants object to the Admissions to the extent that they are premature; Rule 36 is "a procedure for obtaining admissions for the record of facts *already known*." *Ghazerina v. United States*, No. 89-8900, 1991 WL 30746, at *2 (E.D. Pa. Mar. 5, 1991). Thus, admissions are usually propounded at the end of discovery, and Rule 36(a)(6) permits courts to defer rulings on the propriety answer and objections to admissions.

6.      Defendants object to the Admissions and Definitions and Instructions contained in the Admissions to the extent they purport to expand enlarge or alter the obligations of Defendants under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Pennsylvania.

7.      Defendants objects to the Admissions on the grounds and to the extent that they seek information protected by the attorney-client privilege, the work-product doctrine and/or any other applicable claim of privilege or protection from discovery or disclosure.

8.      Defendants object to the Admissions to the extent that they seek information that is neither relevant to the claims or defenses in the above-captioned action nor reasonable calculated to lead to the discovery of relevant and admissible evidence.

9.      Defendants submit the following Responses on the basis of documents and information currently in its possession custody or control. The Responses, accordingly, are provided without prejudice to Defendants' right to make further objections, and to seasonably supplement such responses based upon documents or other information later discovered or that further investigation or discovery may indicate are relevant to claims and defenses in the above-captioned action and are sought in the Requests.

II.     **Objections and Answers to Admissions**

1.      Defendant Callan is an owner of Defendant HWC.

4

**RESPONSE:** Admitted in part; denied in part.  HWC is a limited liability company, and Callan is a member of HWC.

2.      Defendant Callan operates controls and/or manages Defendant HWC.

**RESPONSE:** Defendants object to this Admission to the extent that the terms "operates, controls and/or manages" are vague, broad and nonspecific.

3.      HWC is owned solely by Callan and non-party Richard Scott Williams.

**RESPONSE:** Admitted.

4.      Defendant HWC is the only general partner of Hawk Management.

**RESPONSE:** Admitted.

5.      Callan is a limited partner of Hawk Management.

**RESPONSE:** Admitted.

6.      The sole limited partners of Hawk Management are Callan and Williams.

**RESPONSE:** Admitted.

7.      Hawk Management is the only general partner of HOF.

**RESPONSE:** Denied.

8.      Hawk Management is the sole investment manager of HOF.

**RESPONSE:** Denied.

9.      As set forth in the November 1, 2004 Hawk Opportunity Fund L.P. Confidential Private Placement Memorandum, Hawk Management has "full and exclusive discretionary authority and responsibility to manage the day-to-day operations of the [Defendant Hawk Opportunity] Fund and to invest and reinvest its assets."

**RESPONSE:** Denied.

10.      HOF owns the majority of outstanding PDV shares.

**RESPONSE:** Admitted.

11.      HOF is the controlling owner of PDV.

**RESPONSE:** Admitted.

12.     As set forth in the November 1, 2004 Hawk Opportunity Fund L.P. Confidential Private Placement Memorandum, HOF has "the ability to exert control over [PDV's] management and affairs and over matters requiring stockholder approval [and] may delay or prevent a change in [PDV's] control and might affect the market price of [PDV's] Common Stock, even when a change in control may be in the best interest of all stockholders. Furthermore, the interests of [HOF's] concentration of ownership may not always coincide with [PDV's] interests or the interests of other stockholders."

**RESPONSE:** Denied.

13.     HOF owns a majority interest in the shares and/or equity of PDV.

**RESPONSE:** Admitted.

14.     HOF exercises managerial control over PDV.

**RESPONSE:** Denied.

15.     HOF carries out significant business functions for PDV, including but not limited to administering investments in PDV.

**RESPONSE:** Denied.

16.     Defendant PDV is a Costa Rican corporation.

**RESPONSE:** Admitted.

17.     Callan serves as a Director of PDV.

**RESPONSE:** Admitted.

18.     Callan is the President of PDV.

**RESPONSE:** Admitted.

19.     Callan is a member of the Executive Committee of PDV.

**RESPONSE:** Denied. PDV does not have an Executive Committee.

6

20.    Callan controls PDV through his ownership interests in and control over HWC.

**RESPONSE:** Admitted in part; denied in part. Defendants admit that HWC is a limited liability company and Callan is a member of HWC. All remaining averments contained in this paragraph are denied.

21.    Callan controls PDV through his ownership interests in and control over Hawk

Management.

**RESPONSE:** Admitted in part; denied in part. Defendants admit that HWC is the general partner of Hawk Management, HWC is a limited liability company and Callan is a member of HWC. All remaining averments contained in this Admission are denied.

22.    Callan controls PDV through his ownership interests in and control over HOF.

**RESPONSE:** Denied.

23.    Callan controls PDV through his position as president of PDV.

**RESPONSE:** Admitted in part; denied in part. It is admitted that Callan is the president of PDV. The remaining averments contained in this Admission are denied.

24.    Callan controls PDV through his position as a director of PDV.

**RESPONSE:** Admitted in part; denied in part. It is admitted that Callan is a director of PDV. The remaining averments contained in this Admission are denied.

25.    Callan controls PDV through his position as a member of the PDV Executive

Committee.

**RESPONSE:** Denied.

26.    Lesniak, as PDV's Corporate Secretary, received PDV's Stock Exchange Offer

Forms at his offices located at 415 McFarlan Road in Kennett Square, Pennsylvania.

**RESPONSE:** Denied.

27.    Lesniak, as PDV's Corporate Secretary, maintained PDV's the remitted Stock

Exchange Offer Forms at his offices located at 415 McFarlan Road in Kennett Square,

Pennsylvania.

**RESPONSE:** Denied.

28.    Some or all of PDV's corporate records have been maintained in Pennsylvania.

**RESPONSE:** Denied.

29.    Callan is an agent of PDV.

**RESPONSE:** Denied.

30.    Lesniak is PDV's Corporate Secretary.

**RESPONSE:** Denied.

31.    PDV's Corporate Secretary is responsible for maintaining PDV's official records.

**RESPONSE:** Denied.

32.    Lesniak, in his capacity as PDV's Corporate Secretary, maintains PDV's official records.

**RESPONSE:** Denied.

33.    Lesniak has served as PDV's Chief Financial Officer.

**RESPONSE:** Denied.

34.    Lesniak has served as the Hotel's general manager.

**RESPONSE:** Denied.

35.    Lesniak has served as the PDV Board's Secretary.

**RESPONSE:** Admitted.

36.    Lesniak has served as a member of the PDV Board's Executive Committee.

**RESPONSE:** Denied.

37.    Callan, HWC, Hawk Management and HOF have offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE:** Admitted.

38.    HWC conducts business from its offices at 159 North State Street in Newtown, Pennsylvania.

8

RESPONSE: Admitted.

39. Hawk Management conducts business from its offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Admitted.

40. HOF conducts business from its offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Denied.

41. As part of its business, HOF manages an Investment Pool from its offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Denied.

42. Callan communicates by telephone, e-mail, text messaging, facsimile, video conferencing, and other telephonic, satellite and/or web-based communication from his offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Admitted.

43. Callan communicates about and on behalf of PDV from his offices in Newtown, Pennsylvania.

RESPONSE: Admitted.

44. Callan conducts business on behalf of HWC from the offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Admitted.

45. Callan conducts business on behalf of Hawk Management from the offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Admitted.

46. Callan conducts business on behalf of HOF from the offices at 159 North State

Street in Newtown, Pennsylvania.

    **RESPONSE:** Admitted.

    47.    Callan conducts business on behalf of PDV from the offices at 159 North State Street in Newtown, Pennsylvania.

    **RESPONSE:** Admitted.

    48.    Callan conducts business on behalf of the Hotel from the offices at 159 North State Street in Newtown, Pennsylvania.

    **RESPONSE:** Denied.

    49.    PDV has a self-described United States "branch office" at 159 North State Street in Newtown, Pennsylvania.

    **RESPONSE:** Denied.

    50.    PDV's self-described United States "branch office" is located at the same address as the offices of Callan, HWC, Hawk Management and HOF.

    **RESPONSE:** Denied.

    51.    Callan operates HOF's general partner, Hawk Management, from 159 North State Street in Newtown, Pennsylvania.

    **RESPONSE:** Admitted.

    52.    HOF owns and manages PDV from 159 North State Street in Newton, Pennsylvania -- the same location as Callan's office.

    **RESPONSE:** Denied.

    53.    PDV, Hawk Management, HOF, and HWC all share Callan as their executive, director, owner, manager or supervisor.

    **RESPONSE:** Defendants object to this Admission because the terms "executive, director, owner, manager or supervisor" are vague, broad and nonspecific.

54.    Callan carries out significant business functions for PDV, including but not limited to securing individual shareholder investments in PDV, directing the PDV Board (which directs the management of the Hotel), and advertising Hotel events.

**RESPONSE:** Denied.

55.    Callan carries out significant business functions for PDV, including but not limited to directing the PDV Board — which directs the management of the Hotel.

**RESPONSE:** Denied.

56.    The PDV Executive Committee directs the management of the Hotel, which direction is carried out on a day-to-day basis by Hotel employees in Costa Rica.

**RESPONSE:** Denied.

57.    The PDV Executive Committee includes Williams.

**RESPONSE:** Denied.

58.    Williams has managerial responsibility and/or an ownership interest in HWC, Hawk Management and HOF.

**RESPONSE:** Defendants object to this Admission because it is vague, broad and nonspecific.

59.    PDV's Private Placement Memorandum (the "Memorandum"), issued on October 1, 2014, states that PDV's "branch office" in the United States is located at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE:** Admitted.

60.    The Memorandum directs subscribers to return their subscription forms to Lesniak at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE:** Defendants object to this characterization of the Memorandum as it lacks any surrounding context. Subject to the foregoing objections, Defendants admit that the Memorandum directs subscribers to send their subscription forms to the address "c/o Hawk Management, 159 North State Street, Newtown, PA 18940, United States, Attn:

11

Paul Lesniak."

61.    The Memorandum directs subscribers to return their subscription forms to Lesniak in care of Hawk Management.

> **RESPONSE:** Defendants object to this characterization of the Memorandum as it lacks any surrounding context.  Subject to the foregoing objections, Defendants admit that the Memorandum directs subscribers to send their subscription forms to the address "c/o Hawk Management, 159 North State Street, Newtown, PA 18940.111 United States, Attn: Paul Lesniak."

62.    Callan solicited the Kreibichs' purchase of preferred PDV stock.

**RESPONSE:** Denied.

63.    The Kreibichs received the PSA Contract from Callan, who was acting on behalf of PDV.

**RESPONSE:** Denied.

64.    The Kreibichs negotiated the PSA Contract with Callan.

**RESPONSE:** Denied.

65.    Callan was acting as an agent of PDV while negotiating the PSA Contract with the Kreibichs.

**RESPONSE:** Denied.

66.    Callan was located in Pennsylvania for some portion of the period in which he negotiated the PSA Contract with the Kreibichs.

**RESPONSE:** Denied.

67.    Callan represented to the Kreibichs that he was a licensed financial advisor.

**RESPONSE:** Denied.

68.    Callan represented to the Kreibichs that he was an officer of PDV.

**RESPONSE:** Denied.

69.    Callan represented to the Kreibichs that he was a member of the PDV Board.

**RESPONSE:** Denied.

70.     Callan represented to the Kreibichs that he was a member of the PDV Executive Committee.

**RESPONSE:** Denied.

71.     Callan represented to the Kreibichs that he was actively involved in the Hotel's development, and would continue to be involved in Hotel operations after construction was completed.

**RESPONSE:** Denied.

72.     Callan, on behalf of PDV, offered for sale to the Kreibichs a combination co-operative/timeshare which would also generate income for the Kreibichs.

**RESPONSE:** Denied.

73.     Callan represented to the Kreibichs that owners of PDV's preferred stock would realize income on their investment through the mandatory placement of their unit into a "rental pool" for 75% of the year, through which rental pool PDV would rent out units to the public as hotel rooms.

**RESPONSE:** Denied.

74.     Callan represented to the Kreibichs that owners of PDV's preferred stock would receive 60% of the net income achieved from the rental pool on a pro rata basis, according to the number of preferred PDV shares held by the owner in proportion to the total number of outstanding preferred shares.

**RESPONSE:** Denied.

75.     Callan solicited Dr. Lieberman's purchase of preferred PDV stock

**RESPONSE:** Denied.

76.     Dr. Lieberman received the PSA Contract from Callan, who was acting on behalf

13

of PDV.

    **RESPONSE:** Denied.

    77.    Dr. Lieberman negotiated the PSA Contract with Callan.

    **RESPONSE:** Denied.

    78.    Callan was acting as an agent of PDV while negotiating the PSA Contract with Dr. Lieberman.

    **RESPONSE:** Denied.

    79.    Callan was located in Pennsylvania for some portion of the period in which he negotiated the PSA Contract with Dr. Lieberman.

    **RESPONSE:** Denied.

    80.    Callan represented to Dr. Lieberman that he was a licensed financial advisor.

    **RESPONSE:** Denied.

    81.    Callan represented to Dr. Lieberman that he was an officer of PDV.

    **RESPONSE:** Defendants object to this Admission because it is vague, broad and nonspecific.

    82.    Callan represented to Dr. Lieberman that he was a member of the PDV Board.

    **RESPONSE:** Defendants object to this Admission because it is vague, broad and nonspecific.

    83.    Callan represented to Dr. Lieberman that he was a member of the PDV Executive Committee.

    **RESPONSE:** Denied.

    84.    Callan represented to Dr. Lieberman that he was actively involved in the Hotel's development, and would continue to be involved in Hotel operations after construction was completed.

    **RESPONSE:** Defendants object to this Admission because it is vague, broad and

14

nonspecific.

85.    Callan, on behalf of PDV, offered for sale to Dr. Lieberman a combination co-operative/timeshare which would also generate income for Dr. Lieberman.

**RESPONSE:** Denied.

86.    Callan represented to Dr. Lieberman that owners of PDV's preferred stock would realize income on their investment through the mandatory placement of their unit into a "rental pool" for 75% of the year, through which rental pool PDV would rent out units to the public as hotel rooms.

**RESPONSE:** Denied.

87.    Callan represented to Dr. Lieberman that owners of PDV's preferred stock would receive 60% of the net income achieved from the rental pool on a pro rata basis, according to the number of preferred PDV shares held by the owner in proportion to the total number of outstanding preferred shares.

**RESPONSE:** Denied.

88.    PDV has made no income distributions to its shareholders from the inception of the Hotel to the present.

**RESPONSE:** Admitted.

89.    PDV has not produced annual audited accounting statements to its shareholders since 2010.

**RESPONSE:** Denied.

90.    The Preferred Shareholder Letter contains an admission that PDV underestimated the costs of developing the Hotel.

**RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.   Subject to the foregoing objections, Defendants admit that the Preferred Shareholder Letter states that "The development

15

costs were more than had originally been anticipated due to the increased materials costs resulting from a worldwide boon in real estate construction and the added amenities that were required to me the marketplace needs of a five star destination resort."

**RESPONSE:**

91.    In the Preferred Shareholder Letter, the PDV Board invites preferred PDV

shareholders to convert their preferred PDV shares into common PDV shares.

**RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.   Subject to the foregoing objections, Defendants admit that, in the Preferred Shareholder Letter, the PDV Board invites preferred PDV shareholders to convert their preferred PDV shares into common PDV shares.

92.    In the Preferred Shareholder Letter, the PDV Board confirms the preferred PDV

shareholders' contractual usage rights in their units.

**RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.   Subject to the foregoing objections, Defendants deny that, in the Preferred Shareholder Letter, the PDV Board confirms the preferred PDV shareholders' contractual usage rights in their units.  Instead the letter states that the "usage rights are defined on page 5 of this report and are not contractual as currently structured with the Preferred Shareholders and may be modified by the Board of Directors."

93.    The Preferred Shareholder Letter describes Callan's control over PDV through

HOF.

**RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.  Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

94.    The Preferred Shareholder Letter provides Callan's Pennsylvania phone number.

**RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.   Subject to the foregoing objections, Defendants admit that in the Preferred Shareholder Letter, Callan's cell phone number of 610-416-8402 is provided.

95.    The Preferred Shareholder Letter instructs preferred shareholders to convert their

preferred shares to common shares by completing a Stock Exchange Offer Form, which must

then be mailed to PDV's Corporate Secretary, Lesniak, at 415 McFarlan Road, Suite 200, Kennett Square, Pennsylvania.

**RESPONSE:** Admitted.

96.     In the Preferred Shareholder Letter, the PDV Board represents that the Defendants' failure to pay distributions resulted from "the substantial costs to build the existing property and delays in getting the product to market" and the fact that "development costs were more than had been anticipated."

> **RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.  Subject to the foregoing objections, Defendants deny that, in the Preferred Shareholder Letter, the PDV Board represents that the Defendants' failure to pay distributions resulted from "the substantial costs to build the existing property and delays in getting the product to market" and the fact that "development costs were more than had been anticipated."  To the contrary, the letter states that "Because of the substantial costs to build the existing property and delays in getting that product to market, the company has not been able to meet the expected financial projections originally envisioned."

97.     The PDV Board represents in the Preferred Shareholder Letter that PDV was undercapitalized.

> **RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.  Subject to the foregoing objections, Defendants deny that, in the Preferred Shareholder Letter, the PDV Board represents that PDV was undercapitalized.  To the contrary, the letter states that the "capital, both preferred and common was not enough to build the resort as it stands today and $8,000,000 of debt along with common and preferred shareholder equity was needed to complete the task."

98.     The PDV Board represents in the Preferred Shareholder Letter that PDV was using "net income" to fill its capital shortfall.

> **RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context.  Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

99.     The PDV Board represented in the Preferred Shareholder Letter that in order to

allow distributions to unit owners/preferred shareholders, and in order to increase the liquidity and value of PDV shares, Plaintiffs and other preferred shareholders must convert their preferred shares to common shares.

> **RESPONSE:** Defendants object to this characterization of the Preferred Shareholder Letter as it lacks any surrounding context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

100.    The Kreibichs converted their preferred PDV shares to common PDV shares by remitting the Exchange Form to Lesniak at 415 McFarlan Road in Kennett Square, Pennsylvania.

> **RESPONSE:** Admitted.

101.    Callan, through HOF, executed the share conversion of HOF's PDV preferred shares into common stock owned by HOF.

> **RESPONSE:** Denied.

102.    After the mass shareholder conversion from preferred to common PDV stock in 2011, which was prompted by the Preferred Shareholder Letter, HOF became -- and remains -- PDV's controlling shareholder.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad and nonspecific.

103.    HOF asserted that after the conversion HOF "in combination with the condo owners now control[s] the equity and management of the hotel."

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

104.    PDV acknowledges in the Memorandum that HOF has "the ability to exert control over our management and affairs."

> **RESPONSE:** Defendants object to this characterization of the Memorandum as it lacks any surrounding context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

105.    Preferred PDV shareholders who converted their preferred shares to common

shares lost of their contractual rights to income distributions under the Rental Pool Agreement and/or PSA Addendum.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants incorporate their Response to Request for Admission No. 92.

106. Preferred PDV shareholders who converted their preferred shares to common shares lost certain unit usage rights.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants incorporate their Response to Request for Admission No. 92.

107. Preferred shareholders who converted their preferred PDV shares to common shares lost the ability to sell their rights in a specific unit at the Hotel.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

108. When the majority of preferred PDV shareholders converted their preferred shares to common shares, the rental pool expanded as a result of the common shareholders' reduced unit usage rights.

> **RESPONSE:** Denied.

109. When the majority of preferred PDV shareholders converted their preferred shares to common shares and the rental pool expanded, the Hotel's income derived from the rental pool also increased.

> **RESPONSE:** Denied.

110. When the majority of preferred PDV shareholders converted their preferred shares to common shares and the rental-pool-derived income increased, that rental-pool-derived income was available to PDV but not to common PDV shareholders.

**RESPONSE:** Denied.

111.  PDV did not inform its preferred shareholders that converting their preferred shares to common shares would divest them of their contractual right to a pro rata distribution of PDV's net income.

**RESPONSE:** Denied.

112.  PDV did not inform its preferred shareholders that converting their preferred shares to common shares would divest them of their contractual right to resell a designated unit.

**RESPONSE:** Denied.

113.  PDV did not inform its preferred shareholders that converting their preferred shares to common shares would divest them of their contractual right to resell a designated unit.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.  Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

114.  The PDV Board represented to preferred shareholders that conversion of their preferred PDV shares to common PDV shares was necessary for the financial health of the Hotel.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

115.  The Kreibichs executed the Stock Exchange Offer Form and remitted it to Lesniak at his Pennsylvania address.

**RESPONSE:** Admitted.

116.  Dr. Lieberman did not execute the Stock Exchange Offer Form or remit it to Lesniak at his Pennsylvania address.

**RESPONSE:** Admitted.

117.  Dr. Lieberman did not convert his preferred PDV shares to common shares, and therefore Dr. Lieberman remains a preferred PDV shareholder.

RESPONSE: Admitted.

118.   PDV undercapitalized the Hotel project from its inception.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

119.   The Hotel produced sufficient income to meet its operating costs.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

120.   HOF has advanced funds to PDV from its Investment Pool in Pennsylvania between 2005 and the present.

RESPONSE: Defendants object to this Admission because the term "Investment Pool" is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

121.   The funds advanced by HOF to PDV have been used by PDV to finance the construction of the Hotel.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

122.   The funds advanced by HOF for the construction of the Hotel units were to be repaid from the proceeds of the sale of those units.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

123.   HOF owns certain development rights for expansion of the Hotel.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing objections, Defendants deny that HOF owns certain development rights for expansion of the Hotel.

124.   HOF initially owned a secured lien in PDV and/or the Hotel.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing objections, admitted.

21

125.   HOF converted its secured interest in PDV and/or the Hotel into equity in PDV.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing objections, admitted.

126.   HOF represented in a December 1, 2010 self-authored article posted on the HOF website that that the Hotel has been appraised by the bank to have a value in excess of $20,000,000.

**RESPONSE:** Defendants object to this characterization of the December 1, 2010 article as it lacks any surrounding context. Subject to the foregoing objections, admitted.

127.   Common PDV shareholders have the right to income distributions that are based upon the Hotel's net income.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

128.   PDV, by and through the operations of the Hotel, earned equal or greater annual net income from shareholders' participation in the rental pool after the June 2011 conversion than it earned annually during the period 2007-2010.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

129.   Each of PDV's 2007-2010 financial statements state that PDV achieved no "net income" for the years 2007, 2008, 2009 and 2010.

**RESPONSE:** Admitted.

130.   Before reduction of PDV's gross income by depreciation expense and debt service, the net income of PDV was approximately $650,000 in 2008.

**RESPONSE:** Denied.

131.   Before reduction of PDV's gross income by depreciation expense and debt service, the net income of PDV was approximately $1,300,000 in 2009.

**RESPONSE:** Denied.

132.   Before reduction of PDV's gross income by depreciation expense and debt service, the net income of PDV was approximately $900,000 in 2010.

**RESPONSE:** Denied.

133.   Based upon the information provided in the 2007-2010 financial statements and the Preferred Shareholder Letter, during the years 2007 through 2010 the net income of PDV was collectively approximately $3,550,000 before reductions for depreciation expense and debt service and the use of $595,000 for capital improvements.

**RESPONSE:** Denied.

134.   Approximately sixty percent of the $3,550,000 net income of PDV (before reductions for depreciation expense, debt service and capital improvements) during the years 2007 through 2010 should have been distributed to the unit owners/preferred shareholders under the Rental Pool Agreement and the PSA Addendum.

**RESPONSE:** Denied.

135.   For purposes of determining the "net income" generated from the combined rental income of the units, debt service expenses were deducted from revenue by PDV.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

136.   For purposes of determining the "net income" generated from the combined rental income of the units, deductions from revenue were made for depreciation by PDV.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

137.   For purposes of determining the "net income" generated from the combined rental income of the units, improvement expenses and/or capital expenditures were deducted from

23

revenue by PDV.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

138.   PDV represented that the Kreibichs' conversion of their preferred shares to common shares would result in distribution payments to the Kreibichs as common shareholders.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

139.   No income dividend or distribution payments have been made to the Kreibichs or other common shareholders since their conversion from preferred PDV shareholders.

> **RESPONSE:** Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

140.   PDV, in the Memorandum, represented that cash dividends were not paid on any class of stock since PDV's formation as part of PDV's plan to retain all earnings to finance the development of the business and for general corporate purposes.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case. Subject to the foregoing objections, Defendants deny that, in the Memorandum, the PDV Board represented that cash dividends were not paid on any class of stock since PDV's formation as part of PDV's plan to retain all earnings to finance the development of the business and for general corporate purposes. To the contrary, the Memorandum states that "We have not paid cash dividends on any class of stock since formation and we don not anticipate paying any dividends on our outstanding Common Stock or Preferred Stock in the foreseeable future. We plan to retain any earnings to finance the development of the business and for general corporate purposes."

141.   The unit usage rights of common PDV shareholders are far more limited than the usage rights of preferred PDV shareholders.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

142.   Dr. Lieberman made a reservation for the use of unit 603 at the Hotel for the

period of July 6, 2013 through July 13, 2013 for the use of friends.

> **RESPONSE:** Admitted that Dr. Lieberman made a reservation for the use of unit 603 at the Hotel for the period of July 6, 2013 through July 13, 2013. Defendants have made a reasonable inquiry into whether this reservation was for the use of friends of Dr. Lieberman and is unable to admit or deny this portion of this Admission.

143.   Dr. Lieberman attempted to make reservations for the use of Unit 603 at the Hotel during February and March of 2014.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing objections, admitted.

144.   With respect to Dr. Lieberman's request for reservations for unit 603 at the Hotel for January and February 2014, Dr. Lieberman was informed by Lesniak that PDV had the right to deny Dr. Lieberman his contractual right to the use of his unit for the predetermined ninety-one calendar days.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

145.   In an email dated March 11, 2014, Lesniak advised Dr. Lieberman that his July 2014 reservation for the use of unit 603 at the Hotel must be rescheduled as July is considered the high season.

> **RESPONSE:** Admitted.

146.   The email dated March 11, 2014, in which Lesniak advised Dr. Lieberman that his July reservation must be rescheduled as July is considered the high season, contravenes the terms of the Rental Pool Agreement which define high season as the period from November 30 through May 1 of each year.

> **RESPONSE:** Denied.

147.   Preferred shareholders' unit usage rights are not unilaterally modifiable by PDV.

> **RESPONSE:** Denied.

25

148.   PDV's representation, by and through Lesniak (as set forth in Lesniak's March 11, 2014 email) that July is part of the "high season" constitutes a unilateral modification of the Rental Pool Agreement.

**RESPONSE:** Denied.

149.   PDV's representation by and through Lesniak (as set forth in Lesniak's March 11, 2014 email) that July is part of the "high season" constitutes a unilateral modification of the PSA Addendum.

**RESPONSE:** Denied.

150.   Lesniak also represented to Dr. Lieberman in the same March 11, 2014 e-mail that the month of August now is part of the "high season" pursuant to unilateral revisions PDV shareholders' usage rights.

**RESPONSE:** Denied.

151.   Neither PDV nor Lesniak provided an explanation as to why certain of Dr. Lieberman's requests for usage of unit 603 were permitted in the newly-declared "high season" while others were not.

**RESPONSE:** Denied.

152.   Neither Lesniak nor any other representative of PDV ever provided Dr. Lieberman with a copy of any PDV Board resolution concerning the unilateral modification of preferred shareholders' unit usage rights.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing, admitted in part; denied in part. Defendants admit that Lesniak and PDV did not provide Dr. Lieberman with a copy of the PDV Board resolution regarding unit usage rights. All remaining averments contained in this Admission are denied.

153.   Neither Lesniak nor any other representative of PDV ever provided Dr. Lieberman with a copy of a PDV Board Resolution concerning the unilateral modification of the

"high season."

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing, admitted in part; denied in part. Defendants admit that Lesniak and PDV did not provide Dr. Lieberman with a copy of the PDV Board resolution regarding the "high season." All remaining averments contained in this Admission are denied.

> **RESPONSE:**

> **RESPONSE:** Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

154.   PDV, by and through Lesniak, informed Dr. Lieberman that the Hotel/Defendants would suspend all interaction and cancel all existing reservations if Dr. Lieberman pursued legal action against PDV.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

155.   Each of Dr. Lieberman's previously confirmed 2014 reservations for use of unit 603 at the Hotel have been cancelled.

> **RESPONSE:** Denied.

156.   No future reservations for use of unit 603 at the Hotel have been granted to Dr. Lieberman.

> **RESPONSE:** Denied.

157.   No future reservations for use of unit 603 at the Hotel will be granted to Dr. Lieberman.

> **RESPONSE:** Denied.

158.   As of March 2014, the unilaterally modified "high season" is late November (Thanksgiving) through April, and July and August of each year.

> **RESPONSE:** Denied.

159.    As of March 2014, the unilaterally modified "high season" results in a total of seventeen calendar weeks in which PDV shareholders can exercise their ten weeks of "unrestricted" unit usage rights.

**RESPONSE:** Denied.

160.    The Rental Pool Agreement and the PSA Addendum expressly define the "high season" as the period of November 30 through May 1 of each year.

**RESPONSE:** Denied.

161.    The Rental Pool Agreement restricts each preferred shareholder's usage rights in his or her unit only between December 20 and January 5 of each year (the "holiday season").

**RESPONSE:** Denied.

162.    The Rental Pool Agreement provides that during the remainder of the "high season" (outside of the "holiday season"), preferred shareholders had usage rights in their assigned unit subject to a twenty-one day limitation.

**RESPONSE:** Denied.

163.    Callan, on behalf of PDV, offered to sell to the Kreibichs a combination co-operative/timeshare that would also generate income to the Kreibichs.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

164.    On January 3, 2006, Callan e-mailed the Kreibichs from Pennsylvania, and represented that the Hotel was "sold out" when it in fact was not.

**RESPONSE:** Denied.

165.    All the Hotel units have never been simultaneously "sold out."

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

166.    Callan directed the Kreibichs' second and final payment of $150,000 for their

purchase of preferred PDV shares to be Forwarded For Credit to HOF.

**RESPONSE:** Denied.

167.    Callan was President of the PDV Board on February 15, 2011, when it issued the Preferred Shareholder Letter.

**RESPONSE:** Denied.

168.    Callan represented to one or more of the Plaintiffs that a re-sale market exists for the Hotel units.

**RESPONSE:** Admitted.

169.    Callan holds himself out to the public as one of two co-owners of the Hotel.

**RESPONSE:** Denied.

170.    The Hotel specifically advertises to and solicits residents of the Commonwealth of Pennsylvania.

**RESPONSE:** Denied.

171.    The Hotel's website identifies Callan as a "Philadelphia-based co-owner."

**RESPONSE:** Admitted.

172.    Callan solicited investors for PDV from his offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

173.    Callan, on behalf of PDV, solicited investment in PDV from the Kreibichs while located at his offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

174.    Callan, on behalf of PDV, solicited investment in PDV from Dr. Lieberman while

located at his offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

175. Callan, on behalf of PDV, communicated with existing and potential PDV investors from his offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

176. Callan, on behalf of PDV, directed significant activities of PDV, including development, financing and the management of culinary and other events, from his offices at 159 North State Street in Newtown, Pennsylvania.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

177. Callan has threatened PDV preferred shareholders who refused to convert their shares into common stock that if they refused to convert their preferred PDV stock into common stock, they would be left with "virtually worthless" preferred stock.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

178. Callan has represented to PDV preferred shareholders who refused to convert their shares into common stock that the only way preferred shareholders could now convert is with Callan's permission.

RESPONSE: Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context.

179. Callan personally controls the possession and release of the preferred PDV shareholders' stock certificates.

RESPONSE: Denied.

180.   On February 13, 2014, Dr. Lieberman received an e-mail from the Hotel informing him for the first time of PDV's "restructuring process."

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the forgoing objections, the admission is admitted in part. It is admitted the Lieberman received an email dated February 13, 2014 regarding PDV's restructuring process. Based on available information, Defendants are unable to admit or deny whether the February 13, 2014 email was the first time Lieberman was informed of the restructuring process.

181.   In the February 13, 2014 Restructuring Process e-mail, PDV states that new stock certificates would be issued to preferred and newly converted common shareholders as a result of PDV's "restructuring."

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing objections, Defendants deny that the certificates would be issued to preferred and newly converted common shareholders as a result of PDV's "restructuring." To the contrary, the February 13, 2014 email notes that the new stock certifies were provided "based on the fact that some of the shareholders never had their certificates, or lost them."

182.   Attached to the February 13, 2014 Restructuring Process e-mail was a copy of Dr. Lieberman's new stock certificate, "Series A, No. 2," which purported to evidence Dr. Lieberman's ownership of 25 of PDV's 520 outstanding preferred shares.

> **RESPONSE:** Admitted.

183.   On the date of the Restructuring Process e-mail, only three PDV preferred shareholders remained, including Dr. Lieberman.

> **RESPONSE:** Denied.

184.   On the date of the Restructuring Process e-mail, there were not 520 outstanding PDV preferred shares.

> **RESPONSE:** Denied.

185.   The Restructuring Process e-mail informs recipients that original new stock certificates could be picked up by shareholders in person at "Hawk Management, 159 N. State

Street, Newtown, PA 18940, USA."

**RESPONSE:** Admitted.

186.    PDV issued new stock certificates to both preferred and newly converted common shareholders.

**RESPONSE:** Admitted.

187.    There are precisely and only four written contracts governing the agreement between the Kreibichs and PDV — the PSA, and Rental Pool Agreement, the Regulations and the PSA Addendum.

**RESPONSE:** Denied.

188.    There are precisely and only four written contracts governing the agreement between Dr. Lieberman and PDV — the PSA, and Rental Pool Agreement, the Regulations and the PSA Addendum.

**RESPONSE:** Denied.

189.    Dr. Lieberman has not breached any term or condition of any portion of the PSA Contract.

**RESPONSE:** Denied.

190.    The Kreibichs have not breached any term or condition of any portion of the PSA Contract.

**RESPONSE:** Denied.

191.    The term "net income" in the Rental Pool Agreement does not allow deductions for debt service, depreciation, or capital expenditures/improvements.

**RESPONSE:** Denied.

192.    The term "credit charges" in the Rental Pool Agreement references credit card charges.

32

**RESPONSE:** Denied.

193.    The term "credit charges" in the Rental Pool Agreement does not reference debt service.

**RESPONSE:** Denied.

194.    Callan represented to the Kreibichs that their rights under the Rental Pool Agreement and PSA Addendum were contractual obligations of the parties.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

195.    Callan represented to Dr. Lieberman that his rights under the Rental Pool Agreement and PSA Addendum were contractual obligations of the parties.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

196.    The Kreibichs' rights under the terms and conditions of the Rental Pool Agreement and the PSA Addendum are not subject to unilateral modification.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

197.    Dr. Lieberman's rights under the terms and conditions of the Rental Pool Agreement and the PSA Addendum are not subject to unilateral modification.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

198.    Each of the PSA Contract documents constitute representations of PDV.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

199.    The PSA Contract documents were provided to the Plaintiffs in order to induce

them to purchase PDV shares.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

200.   Both the PSA Addendum and the Rental Pool Agreement require PDV to provide

each preferred shareholder with his share of the pro rata distribution of PDV's net income within

sixty days of the close of each fiscal period.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

201.   The conversion of the majority of outstanding preferred PDV shares to common

shares has not increased the value and/or liquidity of common PDV shares.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

202.   Callan, on behalf of PDV, represented to the Kreibichs that the value of their

investment in PDV stock has decreased substantially from the value of their PDV investment at

the time of their original purchase.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

203.   In the Memorandum, PDV announced that the entirety of its "class of Preferred

Stock shall be automatically deleted sometime in 2017."

> **RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

204.   In the Memorandum, PDV did not provide any grounds or legal authority for its

decision to "automatically delete sometime in 2017" all outstanding preferred PDV stock.

> **RESPONSE:** Defendants object to this Admission because it is vague, broad,

nonspecific and lacks any context. Defendants object to this Admission because it calls for a conclusion on one of the ultimate issues in the case.

205.    PDV does not have any legal basis or authority to delete all outstanding preferred PDV stock.

**RESPONSE:** Defendants object to this Admission because it is vague, broad, nonspecific and lacks any context. Subject to the foregoing objections, denied.

206.    In a May 2014 telephone conversation, Callan disclosed to Mr. Kreibich that the Kreibichs' investment in PDV had declined in value by nearly half, and was essentially illiquid.

**RESPONSE:** Denied.

As to the foregoing objections only,

SIRLIN, LESSER & BENSON, P.C.

Peter A. Lesser (PA Id. 59433)
Patrick J. Troy (PA Id. 89890)
123 South Broad Street, Suite 2100
Philadelphia, PA 19109
Phone: (215) 864-9700
*Attorneys for Defendants*

Dated: December 8, 2015

## VERIFICATION

I, David Callan, hereby verify that I am authorized to make this verification on behalf of the defendants Playa Dulce Vida, S.A., Hawk Opportunity Fund, L.P., Hawk Management L.P., HWC, LLC, and David Callan and that the statements made in the foregoing supplemental responses are true and correct to the best of my knowledge, information and belief.

David Callan

## CERTIFICATE OF SERVICE

I, Patrick J. Troy, hereby certify that on December 8, 2015 I caused a true and correct copy of the foregoing Defendants' Supplemental Answers and Objections to Plaintiffs' Joint Set of Admissions to be served on the following via Federal Express:

Brian O'Neill, Esquire
Silverang, Donohoe, Rosenzweig & Haltzman, LLC
595 East Lancaster Ave., Suite 203
St. Davids, PA 19087

*Counsel for Plaintiffs*

Patrick J. Troy (PA Id. 89890)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD and SUSAN KREIBICH, h/w | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| DAVID CALLAN, | : | Case No.   2:14-cv-5102-ER |
| HWC, LLC, | : | |
| HAWK MANAGEMENT L.P., | : | |
| HAWK OPPORTUNITY FUND, L.P | : | |
| and PLAYA DULCE VIDA, S.A. | : | |
| Defendants. | : | |
| DR. RICHARD LIEBERMAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| vs. | : | |
| DAVID CALLAN, | : | Case No.   2:14-cv-3393-ER |
| HWC, LLC, | : | |
| HAWK MANAGEMENT L.P., | : | |
| HAWK OPPORTUNITY FUND, L.P | : | |
| and PLAYA DULCE VIDA, S.A. | : | |
| Defendants. | : | |

## PLAINTIFFS RICHARD LIEBERMAN AND RICHARD and SUSAN KREIBICH'S JOINT REQUESTS FOR ADMISSIONS

Plaintiffs in the above-captioned actions – which have been consolidated for discovery purposes only – Richard Kreibich and Susan Kreibch (the "Kreibichs") and Dr. Richard Lieberman ("Dr. Lieberman" and together with the Kreibichs, collectively "Plaintiffs"), by and through their undersigned counsel, Silverang, Donohoe, Rosenzweig & Haltzman, LLC, hereby serve the following Joint

Requests for Admissions ("Requests") pursuant to Fed. R. Civ. P. 36. Pursuant thereto, these Requests are to be answered within thirty (30) days of service. These Requests are to be deemed continuing, and Supplemental Responses are required in accordance with the applicable Rules of Court.

## INSTRUCTIONS & DEFINITIONS

1.      The terms "Document" or "Documents" includes all papers, writings, or records of any type or source of authorship in your possession, custody, or control or of which you have knowledge, wherever located, however produced or reproduced, or whether a draft, original or copy, including electronically generated information, electronically transmitted information, and electronically stored information. By way of illustration and not limitation, the term "Documents" shall include memoranda of telephone conversations, summaries, drafts, diaries, or other records of personal conversations or interviews and minutes, summaries or other records of meetings, discussions, or conferences; as well as other notes, reports, records, data, memoranda, correspondence, electronic mail, notebooks, scrapbooks, diaries, minutes, financial statements, ledgers, video tapes, magnetic tape or other sounds recordings, CDs, DVDs, telegrams, photographs, drawings, plans, studies, manuals, instructions, bids, specifications, graphs, sketches, blueprints, charts, curves, motion picture film, microfilm, computer records, photographs, photographic negatives, photocopies, photostats, descriptions,

purchase orders, agreements, contracts, invoices, bills of lading, published or unpublished speeches, manuscripts or articles, transcripts, affidavits, deposition transcripts, deposition exhibits, hearing transcripts, hearing exhibits, trial transcripts, trial exhibits, printed matter, publications and any other retrievable intelligence, however recorded, memorialized or preserved. Any original or copy containing or having attached thereto and any alternations, notes, comments, or other material not included in each other original or copy shall be deemed a separate document within the foregoing definition.

2.     "All Documents" means every Document, whether an original or a copy.

3.     The singular includes the plural and the plural includes the singular.

4.     The use of the conjunctive includes the use of the disjunctive and the use of the disjunctive includes the use of the conjunctive.  The conjunctive "and" and "or" shall not be interpreted disjunctively or to exclude any Documents otherwise within the scope of these Requests.

5.     The word "any" means any and All Documents so described.

6.     "Person" refers to any individual, company, partnership, agency, organization or other entity, along with his/her/its agents, employees, officers, partners and all other persons acting on his/her/its behalf.

7.    "You" or "Your" means the answering party, and his or its agents, representatives, employees and all other persons acting on his or its behalf.

8.    The "Litigation" refers to the allegations of the complaints most recently filed (i.e., or Amended Complaint or Second Amended Complaint) in the respective above-captioned actions, which have been consolidated for discovery purposes only.

9.    The "Kreibich Complaint" refers to the most recently filed complaint filed in the action filed in this Court, captioned, *Richard and Susan Kreibich v. Callan, et al.*, No. 2:14-cv-05102-ER.

10.    The "Lieberman Complaint" refers to the most recently filed complaint filed in this Court, captioned *Dr. Richard Lieberman v. Callan, et al.*, No. 2:14-cv-3393-ER.

11.    The "Complaint" or the "Complaints" refers to the most recently filed complaints in the above-captioned actions.

12.    "Communication" means any transmission of data, facts, thoughts, opinions or information by speech, writing or signs.

13.    "Callan" shall mean Defendant David Callan.

14.    "Williams" shall mean non-party Richard Scott Williams.

15.    "HWC" shall mean Defendant HWC, LLC.

16.    "Hawk Management" shall mean Defendant Hawk Management, L.P.

17.   "HOF" shall mean Defendant Hawk Opportunity Fund.

18.   "PDV" shall mean Defendant Playa Dulce Vida, S.A.

19.   "Lesniak" shall mean non-party Paul H. Lesniak.

20.   The "Memorandum" shall mean PDV's Private Placement Memorandum issued on October 1, 2014.

21.   The "Hotel" shall mean the Arenas del Mar Beachfront and Rainforest Resort, located in Manuel Antonio, Quepos, Puntarenas, Costa Rica.

22.   "Preferred Shareholder Letter" shall mean the document attached as Exhibit I to the Kreibich Complaint.

23.   "Stock Exchange Offer Form" or the "Exchange Form" shall interchangeably mean the document attached as Exhibit J to the Kreibich Complaint.

24.   "Investment Pool" shall mean the pool of funds from investors aggregated by HOF for the purposes of investment.

25.   The February 13, 2014 "Restructuring Process" e-mail shall mean the document attached as Exhibit T to the Lieberman Complaint.

26.   The "PSA Contract" shall mean the documents attached as Exhibits L, M, N and O to the Lieberman Complaint.

27.   Capitalized terms not otherwise defined herein shall have the same meaning as in the Complaints.

28.    To the extent precise and complete information cannot be furnished, such information as available shall be supplied.  Where firsthand knowledge is not available, You should answer to the best of Your information and belief, and any such answer should be so described.

29.    The fact that Your investigation is continuing, or that discovery is not complete, should not be used as an excuse for failing to provide responses that are as full and complete as possible as of the date of response.  The omission of any information from the response shall be deemed a representation that such information was not known to You or anyone acting on Your behalf at the time of service of the response.

30.    If You object to any Request, You must state the reasons for Your objection and then provide a response and responsive information (to the extent not subject to Your stated objection).

31.    These Requests are not directed merely to the persons or parties whose names appear above, but are meant to include those persons' or parties' past and present agents, servants, insurers, employers, employees, investigators, attorneys, and others similarly situated to the named party or person, including but not limited to directors, trustees, officers or other officials.

32.    If You claim any form of privilege, whether based on statute or otherwise, as a ground for not answering a Request or any portion thereof, set forth

in complete detail each and every fact and ground upon which the privilege is based, including sufficient facts for the court to make a full determination whether the claim of privilege is valid.

33.     Whenever a Request calls for information which is not available to You, but can be obtained at least in part from other sources, You should so state and either supply the information requested or supply the sources from which the information can be obtained.

34.     In responding to any of these Requests, if any ambiguity is encountered in construing either the Requests or a definition or instruction relevant to the inquiry contained within the Requests, You shall identify the matter deemed ambiguous and set forth the construction chosen or used in the response.

35.     These Requests are intended to be continuing, requiring You to provide supplemental responses setting forth any information within the scope of the Request that may be acquired by You, Your attorneys or Your other representatives after the date of Your original responses.

36.     To the extent that any of these Requests contains a Companion Interrogatory, the definitions and instructions contained herein shall apply to that Companion Interrogatory.

37.     To the extent that any of these Requests contains a Companion Document Request, the instructions and definitions contained in Plaintiffs' Joint

Requests for Production of Documents shall apply to that Companion Document Request.

38.    In answering the Companion Interrogatories, You are required to furnish all information which is available to You, including that which has been obtained by and which is now in the possession of Your attorneys, employees, agents or other representatives and not merely information known by the individual/s preparing the response.

39.    In answering each Companion Document Request, in addition to supplying the information and identifying the specific Document/s requested, identify all Documents referred to in preparing your answer.

## REQUESTS FOR ADMISSIONS

1.    Defendant Callan is an owner of Defendant HWC.

**RESPONSE**:

   A.  COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B.  COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

2.      Defendant Callan operates, controls and/or manages Defendant HWC.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

3.      HWC is owned solely by Callan and non-party Richard Scott Williams.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

4.      Defendant HWC is the only general partner of Hawk Management.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

5.    Callan is a limited partner of Hawk Management.

**RESPONSE:**

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

6.    The sole limited partners of Hawk Management are Callan and Williams.

**RESPONSE:**

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

7.    Hawk Management is the only general partner of HOF.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

8.    Hawk Management is the sole investment manager of HOF.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

9.   As set forth in the November 1, 2004 Hawk Opportunity Fund L.P. Confidential Private Placement Memorandum, Hawk Management has "full and exclusive discretionary authority and responsibility to manage the day-to-day operations of the [Defendant Hawk Opportunity] Fund and to invest and reinvest its assets."

**RESPONSE:**

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

10.   HOF owns the majority of outstanding PDV shares.

**RESPONSE:**

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

11.     HOF is the controlling owner of PDV.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

12.     As set forth in the November 1, 2004 Hawk Opportunity Fund L.P. Confidential Private Placement Memorandum, HOF has "the ability to exert control over [PDV's] management and affairs and over matters requiring stockholder approval [and] may delay or prevent a change in [PDV's] control and might affect the market price of [PDV's] Common Stock, even when a change in control may be in the best interest of all stockholders. Furthermore, the interests of [HOF's] concentration of ownership may not always coincide with [PDV's] interests or the interests of other stockholders."

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

13.    HOF owns a majority interest in the shares and/or equity of PDV.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

14.    HOF exercises managerial control over PDV.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

15.    HOF carries out significant business functions for PDV, including but not limited to administering investments in PDV.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

16.     Defendant PDV is a Costa Rican corporation.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

17.     Callan serves as a Director of PDV.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

18.    Callan is the President of PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

19.    Callan is a member of the Executive Committee of PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

20.    Callan controls PDV through his ownership interests in and control over HWC.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

21.    Callan controls PDV through his ownership interests in and control over Hawk Management.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

22.    Callan controls PDV through his ownership interests in and control over HOF.

**RESPONSE:**

    A.    COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B.    COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

23.    Callan controls PDV through his position as president of PDV.

**RESPONSE:**

    A.    COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B.    COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

24.    Callan controls PDV through his position as a director of PDV.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    25.    Callan controls PDV through his position as a member of the PDV Executive Committee.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    26.    Lesniak, as PDV's Corporate Secretary, received PDV's Stock Exchange Offer Forms at his offices located at 415 McFarlan Road in Kennett Square, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

27.    Lesniak, as PDV's Corporate Secretary, maintained PDV's the remitted Stock Exchange Offer Forms at his offices located at 415 McFarlan Road in Kennett Square, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

28.    Some or all of PDV's corporate records have been maintained in Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

29.   Callan is an agent of PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

30.   Lesniak is PDV's Corporate Secretary.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

31.    PDV's Corporate Secretary is responsible for maintaining PDV's official records.

**RESPONSE**:

A. COMPANION INTERROGATORY: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

32.    Lesniak, in his capacity as PDV's Corporate Secretary, maintains PDV's official records.

**RESPONSE**:

A. COMPANION INTERROGATORY: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

33.    Lesniak has served as PDV's Chief Financial Officer.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
      is anything but an unqualified admission, state Your contention, the
      factual basis for Your contention and the sources of proof for the facts
      which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
      support of Your response to this Request and the included Companion
      Interrogatory.

34.    Lesniak has served as the Hotel's general manager.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
      is anything but an unqualified admission, state Your contention, the
      factual basis for Your contention and the sources of proof for the facts
      which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
      support of Your response to this Request and the included Companion
      Interrogatory.

35.    Lesniak has served as the PDV Board's Secretary.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

36.    Lesniak has served as a member of the PDV Board's Executive Committee.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

37.    Callan, HWC, Hawk Management and HOF have offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


38.     HWC conducts business from its offices at 159 North State Street in Newtown, Pennsylvania.

   **RESPONSE**:


   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


39.     Hawk Management conducts business from its offices at 159 North State Street in Newtown, Pennsylvania.

   **RESPONSE**:


   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


40.    HOF conducts business from its offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:


    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


41.    As part of its business, HOF manages an Investment Pool from its offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:


    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

2a0100223130bf50

42.    Callan communicates by telephone, e-mail, text messaging, facsimile, video conferencing, and other telephonic, satellite and/or web-based communication from his offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

43.    Callan communicates about and on behalf of PDV from his offices in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

44.   Callan conducts business on behalf of HWC from the offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

45.   Callan conducts business on behalf of Hawk Management from the offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

46.   Callan conducts business on behalf of HOF from the offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    47.    Callan conducts business on behalf of PDV from the offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    48.    Callan conducts business on behalf of the Hotel from the offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

49.    PDV has a self-described United States "branch office" at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

50.    PDV's self-described United States "branch office" is located at the same address as the offices of Callan, HWC, Hawk Management and HOF.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts
which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
support of Your response to this Request and the included Companion
Interrogatory.

51.     Callan operates HOF's general partner, Hawk Management, from 159
North State Street in Newtown, Pennsylvania.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
is anything but an unqualified admission, state Your contention, the
factual basis for Your contention and the sources of proof for the facts
which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
support of Your response to this Request and the included Companion
Interrogatory.

52.     HOF owns and manages PDV from 159 North State Street in
Newton, Pennsylvania – the same location as Callan's office.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
is anything but an unqualified admission, state Your contention, the
factual basis for Your contention and the sources of proof for the facts
which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

53.    PDV, Hawk Management, HOF, and HWC all share Callan as their executive, director, owner, manager or supervisor.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

54.    Callan carries out significant business functions for PDV, including but not limited to securing individual shareholder investments in PDV, directing the PDV Board (which directs the management of the Hotel), and advertising Hotel events.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

55.    Callan carries out significant business functions for PDV, including but not limited to directing the PDV Board — which directs the management of the Hotel.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

56.    The PDV Executive Committee directs the management of the Hotel, which direction is carried out on a day-to-day basis by Hotel employees in Costa Rica.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

57.    The PDV Executive Committee includes Williams.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

58.    Williams has managerial responsibility and/or an ownership interest in HWC, Hawk Management and HOF.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

59.    PDV's Private Placement Memorandum (the "Memorandum"), issued on October 1, 2014, states that PDV's "branch office" in the United States is located at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

60.    The Memorandum directs subscribers to return their subscription forms to Lesniak at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

61.    The Memorandum directs subscribers to return their subscription forms to Lesniak in care of Hawk Management.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

62.    Callan solicited the Kreibichs' purchase of preferred PDV stock.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

63.    The Kreibichs received the PSA Contract from Callan, who was acting on behalf of PDV.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

64.    The Kreibichs negotiated the PSA Contract with Callan.

**RESPONSE:**

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

65.    Callan was acting as an agent of PDV while negotiating the PSA Contract with the Kreibichs.

**RESPONSE:**

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B.  <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
         support of Your response to this Request and the included Companion
         Interrogatory.

66.     Callan was located in Pennsylvania for some portion of the period in
which he negotiated the PSA Contract with the Kreibichs.

**RESPONSE**:

    A.  <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
         is anything but an unqualified admission, state Your contention, the
         factual basis for Your contention and the sources of proof for the facts
         which support Your contention.

    B.  <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
         support of Your response to this Request and the included Companion
         Interrogatory.

67.     Callan represented to the Kreibichs that he was a licensed financial
advisor.

**RESPONSE**:

    A.  <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
         is anything but an unqualified admission, state Your contention, the
         factual basis for Your contention and the sources of proof for the facts
         which support Your contention.

    B.  <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
         support of Your response to this Request and the included Companion
         Interrogatory.

68.   Callan represented to the Kreibichs that he was an officer of PDV.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

69.   Callan represented to the Kreibichs that he was a member of the PDV Board.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

70.   Callan represented to the Kreibichs that he was a member of the PDV Executive Committee.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

71.    Callan represented to the Kreibichs that he was actively involved in the Hotel's development, and would continue to be involved in Hotel operations after construction was completed.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

72.    Callan, on behalf of PDV, offered for sale to the Kreibichs a combination co-operative/timeshare which would also generate income for the Kreibichs.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

73.   Callan represented to the Kreibichs that owners of PDV's preferred stock would realize income on their investment through the mandatory placement of their unit into a "rental pool" for 75% of the year, through which rental pool PDV would rent out units to the public as hotel rooms.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

74.   Callan represented to the Kreibichs that owners of PDV's preferred stock would receive 60% of the net income achieved from the rental pool on a pro rata basis, according to the number of preferred PDV shares held by the owner in proportion to the total number of outstanding preferred shares.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

75.    Callan solicited Dr. Lieberman's purchase of preferred PDV stock.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

76.    Dr. Lieberman received the PSA Contract from Callan, who was acting on behalf of PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

77.    Dr. Lieberman negotiated the PSA Contract with Callan.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

78.    Callan was acting as an agent of PDV while negotiating the PSA Contract with Dr. Lieberman.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

79.   Callan was located in Pennsylvania for some portion of the period in which he negotiated the PSA Contract with Dr. Lieberman.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

80.   Callan represented to Dr. Lieberman that he was a licensed financial advisor.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

81.   Callan represented to Dr. Lieberman that he was an officer of PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

82.     Callan represented to Dr. Lieberman that he was a member of the PDV Board.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

83.     Callan represented to Dr. Lieberman that he was a member of the PDV Executive Committee.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


84.    Callan represented to Dr. Lieberman that he was actively involved in the Hotel's development, and would continue to be involved in Hotel operations after construction was completed.

**RESPONSE**:


A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


85.    Callan, on behalf of PDV, offered for sale to Dr. Lieberman a combination co-operative/timeshare which would also generate income for Dr. Lieberman.

**RESPONSE**:


A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

86.    Callan represented to Dr. Lieberman that owners of PDV's preferred stock would realize income on their investment through the mandatory placement of their unit into a "rental pool" for 75% of the year, through which rental pool PDV would rent out units to the public as hotel rooms.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

87.    Callan represented to Dr. Lieberman that owners of PDV's preferred stock would receive 60% of the net income achieved from the rental pool on a pro rata basis, according to the number of preferred PDV shares held by the owner in proportion to the total number of outstanding preferred shares.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

88.   PDV has made no income distributions to its shareholders from the inception of the Hotel to the present.

**RESPONSE**:

   A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

89.   PDV has not produced annual audited accounting statements to its shareholders since 2010.

**RESPONSE**:

   A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

90.   The Preferred Shareholder Letter contains an admission that PDV underestimated the costs of developing the Hotel.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

91.   In the Preferred Shareholder Letter, the PDV Board invites preferred PDV shareholders to convert their preferred PDV shares into common PDV shares.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

92.   In the Preferred Shareholder Letter, the PDV Board confirms the preferred PDV shareholders' contractual usage rights in their units.

**RESPONSE:**

    A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

93.   The Preferred Shareholder Letter describes Callan's control over PDV through HOF.

**RESPONSE:**

    A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

94.   The Preferred Shareholder Letter provides Callan's Pennsylvania phone number.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    95.    The Preferred Shareholder Letter instructs preferred shareholders to convert their preferred shares to common shares by completing a Stock Exchange Offer Form, which must then be mailed to PDV's Corporate Secretary, Lesniak, at 415 McFarlan Road, Suite 200, Kennett Square, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    96.    In the Preferred Shareholder Letter, the PDV Board represents that the Defendants' failure to pay distributions resulted from "the substantial costs to build

the existing property and delays in getting the product to market" and the fact that "development costs were more than had been anticipated."

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

97.    The PDV Board represents in the Preferred Shareholder Letter that PDV was undercapitalized.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

98.    The PDV Board represents in the Preferred Shareholder Letter that PDV was using "net income" to fill its capital shortfall.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

99.    The PDV Board represented in the Preferred Shareholder Letter that in order to allow distributions to unit owners/preferred shareholders, and in order to increase the liquidity and value of PDV shares, Plaintiffs and other preferred shareholders must convert their preferred shares to common shares.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

100.    The Kreibichs converted their preferred PDV shares to common PDV shares by remitting the Exchange Form to Lesniak at 415 McFarlan Road in Kennett Square, Pennsylvania.

**RESPONSE:**

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    101.  Callan, through HOF, executed the share conversion of HOF's PDV preferred shares into common stock owned by HOF.

**RESPONSE:**

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    102.  After the mass shareholder conversion from preferred to common PDV stock in 2011, which was prompted by the Preferred Shareholder Letter, HOF became – and remains – PDV's controlling shareholder.

**RESPONSE:**

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

103.    HOF asserted that after the conversion HOF "in combination with the condo owners now control[s] the equity and management of the hotel[.]"

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

104.   PDV acknowledges in the Memorandum that HOF has "the ability to exert control over our management and affairs."

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

105.  Preferred PDV shareholders who converted their preferred shares to common shares lost of their contractual rights to income distributions under the Rental Pool Agreement and/or PSA Addendum.

**RESPONSE:**

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

106.  Preferred PDV shareholders who converted their preferred shares to common shares lost certain unit usage rights.

**RESPONSE:**

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

107.    Preferred shareholders who converted their preferred PDV shares to common shares lost the ability to sell their rights in a specific unit at the Hotel.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

108.    When the majority of preferred PDV shareholders converted their preferred shares to common shares, the rental pool expanded as a result of the common shareholders' reduced unit usage rights.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

109.   When the majority of preferred PDV shareholders converted their preferred shares to common shares and the rental pool expanded, the Hotel's income derived from the rental pool also increased.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

110.   When the majority of preferred PDV shareholders converted their preferred shares to common shares and the rental-pool-derived income increased, that rental-pool-derived income was available to PDV but not to common PDV shareholders.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

111.  PDV did not inform its preferred shareholders that converting their preferred shares to common shares would divest them of their contractual right to a pro rata distribution of PDV's net income.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

112.  PDV did not inform its preferred shareholders that converting their preferred shares to common shares would divest them of their contractual right to the usage of a designated unit.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

113.   PDV did not inform its preferred shareholders that converting their preferred shares to common shares would divest them of their contractual right to resell a designated unit.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

114.   The PDV Board represented to preferred shareholders that conversion of their preferred PDV shares to common PDV shares was necessary for the financial health of the Hotel.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


115.   The Kreibichs executed the Stock Exchange Offer Form and remitted it to Lesniak at his Pennsylvania address.

**RESPONSE**:


    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


116.   Dr. Lieberman did not execute the Stock Exchange Offer Form or remit it to Lesniak at his Pennsylvania address.

**RESPONSE**:


    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

117.   Dr. Lieberman did not convert his preferred PDV shares to common shares, and therefore Dr. Lieberman remains a preferred PDV shareholder.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

118.   PDV undercapitalized the Hotel project from its inception.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

119.   The Hotel produced sufficient income to meet its operating costs.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

120.  HOF has advanced funds to PDV from its Investment Pool in Pennsylvania between 2005 and the present.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

121.   The funds advanced by HOF to PDV have been used by PDV to finance the construction of the Hotel.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

122.   The funds advanced by HOF for the construction of the Hotel units were to be repaid from the proceeds of the sale of those units.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

123.   HOF owns certain development rights for expansion of the Hotel.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B.  COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

124.  HOF initially owned a secured lien in PDV and/or the Hotel.

**RESPONSE**:

A.  COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B.  COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

125.  HOF converted its secured interest in PDV and/or the Hotel into equity in PDV.

**RESPONSE**:

A.  COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B.  COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

126.  HOF represented in a December 1, 2010 self-authored article posted on the HOF website that that the Hotel has been appraised by the bank to have a value in excess of $20,000,000.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

127.  Common PDV shareholders have the right to income distributions that are based upon the Hotel's net income.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

128.   PDV, by and through the operations of the Hotel, earned equal or greater annual net income from shareholders' participation in the rental pool after the June 2011 conversion than it earned annually during the period 2007-2010.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

129.   Each of PDV's 2007-2010 financial statements state that PDV achieved no "net income" for the years 2007, 2008, 2009 and 2010.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

130.   Before reduction of PDV's gross income by depreciation expense and debt service, the net income of PDV was approximately $650,000 in 2008.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    131.   Before reduction of PDV's gross income by depreciation expense and debt service, the net income of PDV was approximately $1,300,000 in 2009.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

    132.   Before reduction of PDV's gross income by depreciation expense and debt service, the net income of PDV was approximately $900,000 in 2010.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

133.  Based upon the information provided in the 2007-2010 financial statements and the Preferred Shareholder Letter, during the years 2007 through 2010 the net income of PDV was collectively approximately $3,550,000 before reductions for depreciation expense and debt service and the use of $595,000 for capital improvements.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

134.  Approximately sixty percent of the $3,550,000 net income of PDV (before reductions for depreciation expense, debt service and capital improvements) during the years 2007 through 2010 should have been distributed to the unit owners/preferred shareholders under the Rental Pool Agreement and the PSA Addendum.

**RESPONSE:**

  A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

  B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

  135.  For purposes of determining the "net income" generated from the combined rental income of the units, debt service expenses were deducted from revenue by PDV.

**RESPONSE:**

  A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

  B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

  136.  For purposes of determining the "net income" generated from the combined rental income of the units, deductions from revenue were made for depreciation by PDV.

**RESPONSE:**

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

137.   For purposes of determining the "net income" generated from the combined rental income of the units, improvement expenses and/or capital expenditures were deducted from revenue by PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

138.   PDV represented that the Kreibichs' conversion of their preferred shares to common shares would result in distribution payments to the Kreibichs as common shareholders.

**RESPONSE**:

A. COMPANION INTERROGATORY: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

139. No income dividend or distribution payments have been made to the Kreibichs or other common shareholders since their conversion from preferred PDV shareholders.

**RESPONSE:**

A. COMPANION INTERROGATORY: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

140. PDV, in the Memorandum, represented that cash dividends were not paid on any class of stock since PDV's formation as part of PDV's plan to retain all earnings to finance the development of the business and for general corporate purposes.

**RESPONSE:**

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

141.  The unit usage rights of common PDV shareholders are far more limited than the usage rights of preferred PDV shareholders.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

142.   Dr. Lieberman made a reservation for the use of unit 603 at the Hotel for the period of July 6, 2013 through July 13, 2013 for the use of friends.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts
which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
support of Your response to this Request and the included Companion
Interrogatory.

143.  Dr. Lieberman attempted to make reservations for the use of Unit 603
at the Hotel during February and March of 2014.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
is anything but an unqualified admission, state Your contention, the
factual basis for Your contention and the sources of proof for the facts
which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
support of Your response to this Request and the included Companion
Interrogatory.

144.  With respect to Dr. Lieberman's request for reservations for unit 603
at the Hotel for January and February 2014, Dr. Lieberman was informed by
Lesniak that PDV had the right to deny Dr. Lieberman his contractual right to the
use of his unit for the predetermined ninety-one calendar days.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

145.   In an email dated March 11, 2014, Lesniak advised Dr. Lieberman that his July 2014 reservation for the use of unit 603 at the Hotel must be rescheduled as July is considered the high season.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

146.   The email dated March 11, 2014, in which Lesniak advised Dr. Lieberman that his July reservation must be rescheduled as July is considered the high season, contravenes the terms of the Rental Pool Agreement which define high season as the period from November 30 through May 1 of each year.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

147.  Preferred shareholders' unit usage rights are not unilaterally modifiable by PDV.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

148.  PDV's representation, by and through Lesniak (as set forth in Lesniak's March 11, 2014 email) that July is part of the "high season" constitutes a unilateral modification of the Rental Pool Agreement.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


149.  PDV's representation by and through Lesniak (as set forth in Lesniak's March 11, 2014 email) that July is part of the "high season" constitutes a unilateral modification of the PSA Addendum.

**RESPONSE:**


   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


150.  Lesniak also represented to Dr. Lieberman in the same March 11, 2014 e-mail that the month of August now is part of the "high season" pursuant to unilateral revisions PDV shareholders' usage rights.

**RESPONSE:**


   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

151.  Neither PDV nor Lesniak provided an explanation as to why certain of Dr. Lieberman's requests for usage of unit 603 were permitted in the newly-declared "high season" while others were not.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

152.  Neither Lesniak nor any other representative of PDV ever provided Dr. Lieberman with a copy of any PDV Board resolution concerning the unilateral modification of preferred shareholders' unit usage rights.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

153.   Neither Lesniak nor any other representative of PDV ever provided Dr. Lieberman with a copy of a PDV Board Resolution concerning the unilateral modification of the "high season."

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

154.   PDV, by and through Lesniak, informed Dr. Lieberman that the Hotel/Defendants would suspend all interaction and cancel all existing reservations if Dr. Lieberman pursued legal action against PDV.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

155.   Each of Dr. Lieberman's previously confirmed 2014 reservations for use of unit 603 at the Hotel have been cancelled.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

156.   No future reservations for use of unit 603 at the Hotel have been granted to Dr. Lieberman.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

157.   No future reservations for use of unit 603 at the Hotel will be granted to Dr. Lieberman.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

158.   As of March 2014, the unilaterally modified "high season" is late November (Thanksgiving) through April, and July and August of each year.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

159.   As of March 2014, the unilaterally modified "high season" results in a total of seventeen calendar weeks in which PDV shareholders can exercise their ten weeks of "unrestricted" unit usage rights.

**RESPONSE**:

    A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

160.   The Rental Pool Agreement and the PSA Addendum expressly define the "high season" as the period of November 30 through May 1 of each year.

**RESPONSE**:

    A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

161. The Rental Pool Agreement restricts each preferred shareholder's usage rights in his or her unit only between December 20 and January 5 of each year (the "holiday season").

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

162. The Rental Pool Agreement provides that during the remainder of the "high season" (outside of the "holiday season"),  preferred shareholders had usage rights in their assigned unit subject to a twenty-one day limitation.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

163.   Callan, on behalf of PDV, offered to sell to the Kreibichs a combination co-operative/timeshare that would also generate income to the Kreibichs.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

164.   On January 3, 2006, Callan e-mailed the Kreibichs from Pennsylvania, and represented that the Hotel was "sold out" when it in fact was not.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

165.   All the Hotel units have never been simultaneously "sold out."

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

166.   Callan directed the Kreibichs' second and final payment of $150,000 for their purchase of preferred PDV shares to be Forwarded For Credit to HOF.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

167.   Callan was President of the PDV Board on February 15, 2011, when it issued the Preferred Shareholder Letter.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

168.  Callan represented to one or more of the Plaintiffs that a re-sale market exists for the Hotel units.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>: Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

169.  Callan holds himself out to the public as one of two co-owners of the Hotel.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>: If Your answer to this Request is anything but an unqualified admission, state Your contention, the

factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

170.   The Hotel specifically advertises to and solicits residents of the Commonwealth of Pennsylvania.

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

171.   The Hotel's website identifies Callan as a "Philadelphia-based co-owner."

**RESPONSE**:

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

174.    Callan, on behalf of PDV, solicited investment in PDV from Dr. Lieberman while located at his offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

175.    Callan, on behalf of PDV, communicated with existing and potential PDV investors from his offices at 159 North State Street in Newtown, Pennsylvania.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. COMPANION DOCUMENT REQUEST:  Provide All Documents in
      support of Your response to this Request and the included Companion
      Interrogatory.


   176.    Callan, on behalf of PDV, directed significant activities of PDV,
including development, financing and the management of culinary and other
events, from his offices at 159 North State Street in Newtown, Pennsylvania.

   **RESPONSE:**


   A. COMPANION INTERROGATORY:  If Your answer to this Request
      is anything but an unqualified admission, state Your contention, the
      factual basis for Your contention and the sources of proof for the facts
      which support Your contention.

   B. COMPANION DOCUMENT REQUEST:  Provide All Documents in
      support of Your response to this Request and the included Companion
      Interrogatory.


   177.    Callan has threatened PDV preferred shareholders who refused to
convert their shares into common stock that if they refused to convert their
preferred PDV stock into common stock, they would be left with "virtually
worthless" preferred stock.

   **RESPONSE:**


   A. COMPANION INTERROGATORY:  If Your answer to this Request
      is anything but an unqualified admission, state Your contention, the
      factual basis for Your contention and the sources of proof for the facts
      which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


178.   Callan has represented to PDV preferred shareholders who refused to convert their shares into common stock that the only way preferred shareholders could now convert is with Callan's permission.

**RESPONSE**:


    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.


179.   Callan personally controls the possession and release of the preferred PDV shareholders' stock certificates.

**RESPONSE**:


    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

180.  On February 13, 2014, Dr. Lieberman received an e-mail from the Hotel informing him for the first time of PDV's "restructuring process."

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

181.  In the February 13, 2014 Restructuring Process e-mail, PDV states that new stock certificates would be issued to preferred and newly converted common shareholders as a result of PDV's "restructuring."

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

182.   Attached to the February 13, 2014 Restructuring Process e-mail was a copy of Dr. Lieberman's new stock certificate, "Series A, No. 2," which purported to evidence Dr. Lieberman's ownership of 25 of PDV's 520 outstanding preferred shares.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

183.   On the date of the Restructuring Process e-mail, only three PDV preferred shareholders remained, including Dr. Lieberman.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
support of Your response to this Request and the included Companion
Interrogatory.

184.  On the date of the Restructuring Process e-mail, there were not 520
outstanding PDV preferred shares.

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
is anything but an unqualified admission, state Your contention, the
factual basis for Your contention and the sources of proof for the facts
which support Your contention.

   B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in
support of Your response to this Request and the included Companion
Interrogatory.

185.  The Restructuring Process e-mail informs recipients that original new
stock certificates could be picked up by shareholders in person at "Hawk
Management, 159 N. State Street, Newtown, PA 18940, USA."

**RESPONSE**:

   A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request
is anything but an unqualified admission, state Your contention, the
factual basis for Your contention and the sources of proof for the facts
which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

186.  PDV issued new stock certificates to both preferred and newly converted common shareholders.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

187.  There are precisely and only four written contracts governing the agreement between the Kreibichs and PDV – the PSA, and Rental Pool Agreement, the Regulations and the PSA Addendum.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

188.   There are precisely and only four written contracts governing the agreement between Dr. Lieberman and PDV – the PSA, and Rental Pool Agreement, the Regulations and the PSA Addendum.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

189.   Dr. Lieberman has not breached any term or condition of any portion of the PSA Contract.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

190.   The Kreibichs have not breached any term or condition of any portion of the PSA Contract.

**RESPONSE:**

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

191.   The term "net income" in the Rental Pool Agreement does not allow deductions for debt service, depreciation, or capital expenditures/improvements.

**RESPONSE:**

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

192.   The term "credit charges" in the Rental Pool Agreement references credit card charges.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

193.   The term "credit charges" in the Rental Pool Agreement does not reference debt service.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

194.   Callan represented to the Kreibichs that their rights under the Rental Pool Agreement and PSA Addendum were contractual obligations of the parties.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

195.  Callan represented to Dr. Lieberman that his rights under the Rental Pool Agreement and PSA Addendum were contractual obligations of the parties.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

196.  The Kreibichs' rights under the terms and conditions of the Rental Pool Agreement and the PSA Addendum are not subject to unilateral modification.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

197.  Dr. Lieberman's rights under the terms and conditions of the Rental Pool Agreement and the PSA Addendum are not subject to unilateral modification.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

    B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

198.  Each of the PSA Contract documents constitute representations of PDV.

**RESPONSE**:

    A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

199.  The PSA Contract documents were provided to the Plaintiffs in order to induce them to purchase PDV shares.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

200.  Both the PSA Addendum and the Rental Pool Agreement require PDV to provide each preferred shareholder with his share of the pro rata distribution of PDV's net income within sixty days of the close of each fiscal period.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

201.  The conversion of the majority of outstanding preferred PDV shares to common shares has not increased the value and/or liquidity of common PDV shares.

**RESPONSE:**

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. COMPANION DOCUMENT REQUEST:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

202.  Callan, on behalf of PDV, represented to the Kreibichs that the value of their investment in PDV stock has decreased substantially from the value of their PDV investment at the time of their original purchase.

**RESPONSE:**

A. COMPANION INTERROGATORY:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

203.  In the Memorandum, PDV announced that the entirety of its "class of Preferred Stock shall be automatically deleted sometime in 2017".

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

204.  In the Memorandum, PDV did not provide any grounds or legal authority for its decision to "automatically delete sometime in 2017" all outstanding preferred PDV stock.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

205.  PDV does not have any legal basis or authority to delete all outstanding preferred PDV stock.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

206.  In a May 2014 telephone conversation, Callan disclosed to Mr. Kreibich that the Kreibichs' investment in PDV had declined in value by nearly half, and was essentially illiquid.

**RESPONSE**:

A. <u>COMPANION INTERROGATORY</u>:  If Your answer to this Request is anything but an unqualified admission, state Your contention, the factual basis for Your contention and the sources of proof for the facts which support Your contention.

B. <u>COMPANION DOCUMENT REQUEST</u>:  Provide All Documents in support of Your response to this Request and the included Companion Interrogatory.

**SILVERANG, DONOHOE,**
**ROSENZWEIG & HALTZMAN, LLC**

By: _____

Philip S. Rosenzweig, Esquire
Attorney ID. No.  62461
595 E. Lancaster Avenue, Suite 203
St. Davids, PA  19087
(610) 263-0115

*Attorneys for Plaintiffs*
*Richard Kreibich and Susan Kreibich*
*and Richard Lieberman*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD and SUSAN KREIBICH, h/w | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| DAVID CALLAN, | : | Case No.    2:14-cv-5102-ER |
| HWC, LLC, | : | |
| HAWK MANAGEMENT L.P., | : | |
| HAWK OPPORTUNITY FUND, L.P | : | |
| and PLAYA DULCE VIDA, S.A. | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| DR. RICHARD LIEBERMAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| vs. | : | |
| DAVID CALLAN, | : | Case No.    2:14-cv-3393-ER |
| HWC, LLC, | : | |
| HAWK MANAGEMENT L.P., | : | |
| HAWK OPPORTUNITY FUND, L.P | : | |
| and PLAYA DULCE VIDA, S.A. | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I, Philip S. Rosenzweig, Esquire, hereby certify that this 12th day of May, 2015, I served a true and correct copy of Plaintiffs Richard Lieberman and Richard and Susan Kreibich's Joint Requests for Admissions, upon the following by both Electronic and First Class Mail:

Patrick J. Troy, Esquire
Sirlin, Lesser & Benson, P.C.
123 South Broad Street, Suite 2100
Philadelphia, PA  19109

Philip S. Rosenzweig, Esquire
595 East Lancaster Avenue
Suite 203
St. Davids, Pa 19087
(610) 263-0115
(610) 263-0122 (Fax)
prosenzweig@sanddlawyers.com

*Counsel for Plaintiffs Richard
Lieberman and Richard and Susan
Kreibich*

{00555186;1}